## OVERLAND SOUTHERN MOTOR COMPANY *v.* MARYLAND CASUALTY COMPANY.

Where on application for a policy of liability insurance the duly authorized agent of the insurer agrees to issue to the applicant a policy as applied for, at a stated premium and to cover specified liabilities, but by fraud or mistake of the insurer's agent the policy is issued at a higher premium and with broader liabilities, and is delivered to the applicant by the insurer, who collects the premium specified in the preliminary agreement, and the applicant retains the policy without discovering the mistake until expiration of the yearly term, equity will so reform the policy as to make it accord with the oral agreement between the parties.

It was erroneous to strike the defendant's special plea, and to enter judgment upon the auditor's report finding for the plaintiff.

June 13, 1917.

Equitable petition. Before Judge Ellis. Fulton superior court. May 30, 1916.

The Maryland Casualty Company instituted an action against the Overland Southern Motor Company, to recover premiums upon certain policies of liability insurance which the plaintiff had issued to the defendant, and to require the defendant to specifically perform certain provisions of the policies. It was alleged that the policies provided, among other things, that "in consideration of a premium to be paid by the defendant to petitioner of $100.00 initial premium, but upon the further understanding and agreement that this sum of $100.00 was merely agreed on as an initial premium, and that the premium was to be adjusted and paid at

the rate of $6.00 for each $100.00 of wages expended by said defendant, paid to its employees; . . that the policy . . might be cancelled by either petitioner or defendant at any time by not less than five days written notice to the other, and that if cancelled by the petitioner· it should be entitled to the earned premium pro rata when determined, and the earned premium was to be computed on the entire compensation of all employees and officials for the full original policy period as indicated by the actual compensation earned by all employees and officials during the time the policy was in force; . . that within sixty days after the termination of the policy period the defendant would furnish the petitioner a statement of all compensation of every kind earned by all employees and officials during the policy period; also that an authorized representative of the petitioner should have the right and opportunity to examine the books and records of the defendant as respect such compensation at any time within twelve months after the termination of the policy." It was sought to compel the defendant to specifically perform the foregoing provisions relating to accounting and examination of books of the insured, etc.; and to recover a general judgment for such amount as might be found due on the basis set forth, over and beyond the initial premium. More than one policy was mentioned, but for all purposes the further statement of the case may be as if there were but one.·

The special defense as set out in the original answer as amended was, in substance, as follows: The preliminary negotiations were between a named duly authorized agent of plaintiff and defendant's president. As an inducement to the application for the insurance, the agent told defendant's president the premium to be charged would be fixed at $100, and that in no event would it be more. On this basis application was made by defendant's president, and the policy was issued and delivered to defendant's president, and the agent stated that the policy was in substance as applied for. On the strength of such representations defendant's president received the policy and paid the premium of $100, and, having confidence in the agent's statement, "did not read the said policy when it was delivered to him, nor at any time thereafter until plaintiff claimed the right to audit his books and exact an additional premium. . . After receiving the said policy, which

was inclosed in an envelope, defendant did not read or examine the same, but assumed that it was the policy applied for by it, and defendant placed said policy for safe-keeping among its valuable books and papers, and never thereafter examined the said policy or read the same, or took it out of the envelope in which it came, or paid any attention whatever to it, until plaintiff's agent and auditor came to defendant's place of business, as set out in this answer and the amendments thereto, and claimed the right to audit defendant's books, alleging that defendant owed an additional amount for said policy." This was shortly after the yearly term of the policy. Defendant's president then discovered that the policy, instead of expressing a fixed premium of $100, contained provisions substantially alleged in the petition as above set out, for premiums additional to the $100, to be ascertained upon the basis of wages and salaries paid by defendant to its employees. The policy was found also to be different from what the agent had represented it to be, in that it "contained an insurance of liability coverage of all of defendant's employees, when defendant had applied for a coverage upon a less number of employees; that is to say, only upon such employees as actually drove automobiles, and not upon office employees and mechanics and floor cleaners and common day-laborers and others." Because of these matters, the policy was substantially different from the policy applied for, and from the provisions which plaintiff's agent stated it contained. Immediately upon discovery of the provisions of the policy as indicated above, defendant repudiated the contract upon the ground of fraudulent representations made by the agent inducing the defendant to accept the policy. On the basis of such allegations the answer denied making the contract as expressed in the policy, and prayed that the policy be so reformed as to speak the real contract, and that the plaintiff be denied the relief prayed in the petition, and that the defendant have appropriate general relief. On demurrer the trial court struck this matter of defense, and the defendant excepted pendente lite. The case was referred to an auditor, who found a stated amount for the plaintiff, and thereupon final judgment was rendered. The defendant excepted, and assigned error on the ruling excepted to pendente lite.

*Bryan, Jordan & Middlebrooks,* for plaintiff in error.

*Leonard Haas,* contra.

5

ATKINSON, J.   In substance the plea alleged, that the defendant's president applied for a policy of liability insurance, the premium for which would be a stated fixed amount, and which would cover specified risks; that the agent of the insurer, on delivering the policy, stated that it conformed to the terms of the application; but that the statements of the agent were untrue in that the policy purported to cover broader risks than those contemplated in the contract, and contained different provisions with respect to the amount of the premium; so that instead of there being a fixed premium in amount as agreed upon, there was an additional amount to be arrived at upon the basis of a percentage of all the wages and salaries paid to the various officers and employees of defendant, thereby making a very much greater premium. There can be no question about the materiality of the difference between the contract as alleged and that expressed by the terms of the policy.   The plea seeks to reform the contract expressed in the policy, so as to make it conform to the contract between the defendant's president and the agent of the insurance company, and as it was represented to be by the defendant's agent at the time of the delivery of the policy, and, upon the basis of the contract as reformed, to deny liability to the plaintiff.   The basis of the plea is fraud upon the part of the agent of the defendant in preparing a policy different from that contracted for, and misstating its contents to the defendant's president at the time of delivering it, coupled with ignorance of the defendant's president as to the real contents of the policy at the time it was received.   As a general rule, where there is no confidential or fiduciary relation existing between the parties, equity will not reform a written contract between them on account of mistake as to the contents of the writing on the part of the complaining party, and fraud of the other party which consists only in making false representations as to such contents on which the complaining party relied, where the complaining party has no sufficient excuse for failing to read the contract. *Weaver* v. *Roberson,* 134 *Ga.* 149 (67 S. E. 662), and citations. The element of inability on the part of defendant's president to read does not enter into the case.   The pivotal question is whether there is sufficient reason for his failure to read the policy.   Contracts of insurance differ from contracts of the character mentioned in the case cited above (a contract for the lease of a hotel),

and contracts of a similar nature, in which both parties sign. The case of *Niagara Fire Insurance Co.* v. *Jordan,* 134 *Ga.* 667 (68 S. E. 611, 20 Ann. Cas. 363), involved the reformation of a contract of insurance, and in principle is very similar to the case under consideration. It was there held: "Where, on oral application for a policy of insurance to indemnify the applicant against loss by fire for the period of one year, the proper agent of the insurer agrees to issue to the applicant a policy of insurance as contracted for, but by mistake of the insurer's agent another's name is inadvertently inserted therein as the insured, and the policy is delivered to the applicant by the insurer, who collects the premium, and the applicant retains the policy without discovering the mistake until after sustaining a loss by fire nearly three months thereafter, equity will reform the policy so as to make it accord with the oral agreement between the parties." In that case the controlling question was whether the insured was guilty of laches in failing to read the policy; or, in other words, was there any excuse for failure to read it and discover that it was different from the preliminary agreement? The policy had been in the possession of the insured for nearly three months, and the mistake was not discovered until after there was a loss. In the course of the opinion, it was said by Evans, P. J.: "The trend of authority is that a mere failure of the insured to read his policy does not amount to such laches as will debar him from having such policy reformed for mistake therein. . . A policy of insurance is issued by the insurer and signed by him or his agent; it is not contemplated that the insured shall sign it. In the insurer's promise to deliver an accurate policy, according to his oral agreement with the insured, the insured has a just expectation that there will be no designed variance. A man should not be permitted for his pecuniary advantage to impute it to another as gross negligence that the other trusted to his fidelity to his promise. . . The case is quite different from those instances where a man who has negligently signed a contract endeavors to be relieved of its obligation by setting up his own negligence. The fact that the policy as actually made out was in the plaintiff's hands for nearly three months, and until after the fire occurred, is a circumstance to be weighed by the jury as bearing on the truth of the allegation that the policy did not pursue the oral contract." In other courts this

line of reasoning has been applied in recent cases. In the case of McMaster *v.* New York Life Ins. Co., 183 U. S. 25 (22 Sup. Ct. 10, 46 L. ed. 64), the policy provided for the non-payment of annual premiums. The application, which was part of the policy, was dated December 12, 1893. After the application was filled out and signed, and without McMaster's knowledge or assent, the company's agent inserted therein, "Please date policy same as application." The policy was issued and dated December 18, and recited that the pecuniary consideration was the payment in advance of the first annual premium, "and of the payment of a like sum on the 12th day of December in every year thereafter during the continuance of this policy." The policy was tendered to McMaster by the company's agent on December 26. McMaster's attention was not called to the terms of the recital just quoted, but, on the contrary, he asked the agent if the policy was as represented, and if they would insure him for a period of thirteen months; to which the agent replied that they did so insure him. Thereupon McMaster paid the agent the full first annual premium, and, without reading it, received the policy and placed it away. McMaster died on January 18, 1895; and he not having paid any further premium, the company defended on the ground that the policy became forfeited on January 12, 1895, being twelve months from December 12, 1893, with the month of grace added. In deciding the case one question dealt with was whether the plaintiff was estopped to deny that McMaster requested that the policy should be in force from December 12, 1893. It was held that the plaintiff was not estopped from making such denial. In the course of the opinion it was said: "Bearing in mind that McMaster had made no request of the company in respect of antedating the policies and was ignorant of the interpolation of the agent, and ignorant in fact, and not informed or notified in any way, of the insertion of December 12th as the date for subsequent payments, he had the right to suppose that the policies accorded with the applications as they had left his hands, and that they secured to him, on payment of the first annual premiums in advance, immunity from forfeiture for thirteen months; and the agent assured him that this was so. The situation being thus, we are unable to concur in the view that McMaster's omission to read the policies, when delivered to him and payment of the premiums made, constituted such negligence as to estop plaintiff from deny-

ing that McMaster by accepting the policies agreed that the insurance might be forfeited within thirteen months from December 12, 1893. Knights of Pythias v. Withers, 177 U. S. 260 [20 Sup. Ct. 611, 44 L. ed. 762], and cases cited; Fitchner v. Fidelity Mut. Fire Assn., 103 Iowa, 276 [72 N. W. 530] ; Hartford etc. Ins. Co. v. Cartier, 89 Mich. 41 [50 N. W. 747]." The doctrine of this case was applied in Summers v. Alexander, 30 Okla. 198 (120 Pac. 601, 38 L. R. A. (N. S.) 787), in which it was held: "One to whom a distinct and definite representation has been made is entitled to rely on such representation, and need not make further inquiry concerning the particular facts involved; and where the transaction involved the taking out of a particular kind of life-insurance policy, the holder had a right to rely upon the belief that the agent would carry out his agreement in conformity to the original contract; and the failure of the agent to do so, whether the result of a mistake or a deliberate fraud, can not operate to the prejudice of such holder in an action brought by the agent to enforce the collection of the premium notes." The same question is dealt with in the case of Pfiester v. Missouri State Life Ins. Co., 85 Kan. 97 (116 Pac. 245). In the course of the opinion it was said: "If the insured or the plaintiff had discovered the omission from the application, and the error in the policy, it would have been his duty to call them to the attention of the company, and have the necessary corrections made. Delay would have indicated acquiescence, and, if sufficiently prolonged, might have affected the right to the equitable remedy of reformation; but there is no evidence that the mistakes were discovered until the policy had matured by the death of the insured. Meanwhile the plaintiff and the insured were not negligent in failing to examine the application or the policy, and were justified in supposing that they had been written as contemplated." Other recent cases to the same effect are: Carlton Lumber Co. v. Lumber Ins. Co., 81 Or. 396 (158 Pac. 807, 159 Pac. 969) ; Salmon v. Farm Property Mut. Ins. Assn., 168 Iowa, 521 (150 N. W. 680). Applying the foregoing principles, it is readily seen that the defendant could not be held barred, as a matter of law, from failure of its president to read the policy and make an earlier discovery of the alleged fraud. It follows that it was erroneous to strike so much of the plea as set up the defense mentioned, and there must be a reversal of the judgment.    *Judgment reversed. All the Justices concur.*