## Flimin's Administratrix v. Metropolitan Life Insurance Company.

(Decided Oct. 9, 1934.)

EATON & BOYD for appellant.

WHEELER, WHEELER & SHELBOURNE for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

On June 12, 1932, Harry Flimin met death by accidental drowning. Thereafter, May N. Hunt was duly appointed by the McCracken county court as his administratrix and qualified as such. At the time of his death, Flimin held a $3,000 endowment policy with the Metropolitan Life Insurance Company payable at the age of 65. Attached to the policy was a rider providing

for double indemnity or for $3,000 in addition to the principal sum of the policy in the event of the death of insured by accident. The policy which was dated March 4, 1932, was issued on an application of insurance dated December 31, 1931. In insured's application the policy was described as "endowment, age 65, waiver of premiums." The company had a plan whereby for a small additional premium it waived payment of premiums on the policy in case of disability of insured. It also had a plan whereby and for the payment of an additional premium it would pay double the face or 'the principal amount of the policy in event of death by external, violent, and accidental means.

The Metropolitan Life Insurance Company instituted this action in the McCracken circuit court against May N. Hunt, administratrix of Harry Flimin, setting up the foregoing facts and alleging, in substance, that the annual premium on the $3,000 endowment policy was $139.68 and the annual premium for the additional provision of the policy providing for waiver of premium in the event of total and permanent disability on part of insured was $7.68; that the company accepted the application made by insured and undertook to issue to him the policy which he applied for, but by mistake and oversight on the part of clerical employees of the company, there was attached to the policy the clause providing for payment of $3,000 in addition to the principal sum of the policy in the event of insured's death as the result of accident; that by mistake and oversight on part of the company's employees the policy containing such provision was delivered to insured, and that by further mistake and oversight on the part of the company, there was omitted from the policy the rider or form for waiver of premium in the event of total and permanent disability, and that by mistake and oversight on the part of Harry Flimin the policy was received and retained by him and was in his possession at the time of his death; that the policy, as thus made out, was issued by the company and accepted by the insured as the result of their mutual mistake—the mistake of the company in issuing and delivering a policy different in form, terms, and conditions from that applied for by the insured in his written application, and the mistake of insured in accepting said policy in different form, terms, and conditions from that applied for. It was further alleged that in the quarterly premium paid by insured

was included the sum of $1.92 as premium for the additional provision for waiver of premium for disability, which sum the plaintiff tendered and offered to return.

It asked for a reformation of the contract of insurance so as to evidence the agreement between the parties as to the terms and the conditions agreed upon between them and as stated in the written application upon which the policy was issued.

The administratrix filed answer and counterclaim and, in the first paragraph, denied the allegations of the petition with reference to mistake in issuing the policy. In a second paragraph she alleged that the policy as issued was delivered to insured while he was in good health; that it was the only contract between the parties and that it was not executed, delivered, accepted, or paid for by any mutual mistake or any mistake whatsoever on the part of the parties; that at the time insured met his death, as alleged in the petition, the contract so issued and delivered by the company and accepted and paid for by the insured was in full force and effect and a claim against the company under the terms and conditions set forth in the policy, and that the company was estopped to plead and rely on any mistake in issuing the policy in avoidance of payment of any sum due under its terms and conditions. She made the third paragraph of her answer a counterclaim setting up the terms and conditions of the policy and sought recovery of $3,000 as the principal sum of the policy and a like sum under the accidental death provision. A reply controverting the affirmative allegations of the answer completed the issues.

On final hearing the chancellor granted the relief sought by the petition and further adjudged that the administratrix of insured recover the $3,000 as the principal sum of the policy and $1.92 paid as a quarterly premium for waiver of premium provision in full satisfaction of any and all claims arising out of the policy in favor of the insured and dismissed so much of the counterclaim as sought to recover $3,000 under the accidental death benefit provision attached to the policy. From so much of the judgment as denied recovery of $3,000 in addition to the principal sum of the policy, the administratrix is appealing.

We find counsel for respective parties in agreement that, if the evidence is sufficient to establish mu-

tual mistake of the parties, a reformation of the contract is authorized and the question to be determined is whether there was such mistake. It is contended on the one hand that the mistake made in issuing the policy was mutual and on the other hand that it was unilateral or a mistake of the company only and in such circumstances reformation would not be warranted.

The evidence establishes beyond all doubt that insured applied for a $3,000 endowment policy with an additional provision for waiver of premium in the event of disability; that by mistake of the agents or employees of the company the rider or supplemental contract provided for payment of double indemnity in the event of death of insured by accident. Insured accepted the policy so issued and paid the exact amount of the first quarterly premium on the character of policy for which he had applied. It is clearly manifest from the evidence and from the natural and reasonable inferences to be drawn therefrom that insured either accepted the policy under the belief that it was in conformity with his agreement with the company as evidenced by the written application or that, having discovered that it contained coverage and benefits for which he had not applied or paid, he suppressed this fact, or, to say the least, failed to speak when equity and good conscience required that he should have acquainted the company with the facts.

We find the general rule respecting the reformation of contracts to be even broader than that agreed upon by counsel. It is a well-established rule in this as well as in practically all other jurisdictions that a contract of insurance, like any other contract, may be reformed for mutual mistake of the parties or mistake upon part of one of the parties and fraud upon part of the other. Central Life Insurance Co. v. Robinson, 181 Ky. 507, 205 S. W. 589; Springfield Fire & Marine Insurance Co. v. Snowden, 173 Ky. 664, 191 S. W. 439; Georgia Casualty Company v. Bond-Filey Lumber Company, 187 Ky. 511, 219 S. W. 442; Home Insurance Company v. Evans, 201 Ky. 487, 257 S. W. 22.

Therefore, since equity will reform either for mutual mistake of the parties or for mistake of one and fraud of the other, appellee would be entitled to relief upon the establishment of either of these circumstances by clear and convincing proof. There is nothing in the

record except inferences that might warrant a conclusion that insured acted in bad faith or fraudulently suppressed or withheld from the company the knowledge that it has issued a policy which did not clearly embody the agreement between the parties. The circumstances are more consistent with the theory that he acted in good faith, and, in such a state of case, equity should not impute to a party fraud or improper motives but should assume the contrary.

It is established by such clear and convincing proof as to preclude all doubt that a mistake was made by appellee in issuing the policy, in fact, appellant admits that the policy is not in accord with the application. From all the proven facts and circumstances, the conclusion is inevitable that insured received and retained the policy under the mistaken belief that it was in conformity with his agreement with the company as embodied in his application.

The question is whether this constituted a mutual mistake of the parties and on this question cases from this jurisdiction are conclusive. In the case of Hemphill v. New York Life Insurance Co., 195 Ky. 783, 243 S. W. 1040, 1042, it appears that the company had issued Hemphill a life policy for $2,000. He borrowed $642 on the policy and afterwards, becoming unable to pay the premium, sought advice from the company as to the amount of paid-up insurance to which he would be entitled. At the time, the cash value of the policy, after deducting the loan to insured, was $137.72, and at his option was payable in cash or might be applied to payment of a paid-up policy. The amount of paid-up insurance to which he was entitled under the policy was $225, but by mistake or inadvertence upon the part of an agent of the company, Hemphill was advised that the company would issue him a paid-up policy for $1,269. He accepted this proposition and a paid-up policy for this sum was issued him. The company later discovered the mistake and instituted an action setting up the facts and asking for a reformation of the contract on account of the alleged mistake in issuing the policy. The court granted the relief sought, and, upon appeal, Hemphill and his wife, to whom the policy had been assigned and who was made a party to the action, contended that the company was bound by the terms of its paid-up policy and was not entitled to a cancellation or reformation

for a mistake due to its negligence and in which appellants had no part; that they acted in the utmost good faith; and that the transaction was a bargain made by the company which was binding upon all concerned. In disposing of this contention, the opinion in part reads:

"At the time they received the letter from the company proposing to give them paid-up insurance to the amount of $1,269 and to cancel their loan, they did not realize nor understand how such conclusion was arrived at nor the mathematics of the proposition; but as they expected only to receive that which the rules of the company ordinarily granted, and the company intended to grant them only such privileges and benefits, there was a mutual mistake. * * * Courts of equity are created for just such purposes; to reach and correct mistakes in which courts of law have no jurisdiction. The mistake is acknowledged by both parties. Hemphill does not deny that he obtained a paid-up policy of insurance for a much greater amount than that to which he was entitled, under all the facts of the case. This is the contention of appellees. Why let such a gross and glaring mistake resulting in great wrong to one of the parties go uncorrected?"

In the course of the opinion the court referred to and cited with approval the case of Coleman v. Illinois Life Insurance Company, 82 S. W. 616, 26 Ky. Law Rep. 900, wherein it was held in effect that a mutual mistake of the parties that would afford relief is one where both of the parties participated in the mistake under the same mistaken conception.

To the same effect and for an illuminating discussion of the principles involved see Columbian National Life Insurance Company v. Herbert A. Black (C. C. A.) 35 F. (2d) 571, 71 A. L. R. 128, an opinion written by the late Judge Cochran, wherein it is held that under practically similar circumstances, insurer was entitled to a reformation of the policy. In this opinion numerous authorities from the courts of Kentucky and other states are cited in support of the conclusion that equity will grant relief in circumstances similar to those established in this case. That equity will reform an insurance policy so as to make it accord with and represent the intention and agreement of the parties is, as said by Judge Cochran, indicated by a "wilderness" of cases.

In addition to the cases hereinbefore cited, see Home Insurance Company of New York v. Gaines, 74 Colo. 65, 218 P. 908; Overland Southern Motor Company v. Maryland Casualty Company, 147 Ga. 63, 92 S. E. 931; Norem v. Iowa Implement Mutual Insurance Ass'n, 196 Iowa, 983, 195 N. W. 725; Gaudet v. North River Insurance Company, 156 La. 719, 101 So. 118; Peterson v. Commonwealth Casualty Co., 212 Mo. App. 434, 249 S. W. 148; Den Hartog v. Home Mutual Insurance Ass'n of Iowa, 197 Iowa, 143, 196 N. W. 944.

Viewed in the light of the authorities cited, the evidence meets every requirement necessary to establish mutual mistake. The same authorities point unerringly to the conclusion that appellee was entitled to the relief sought and that the court correctly adjudged the rights between the parties.

Judgment affirmed.