James Arthur **KARRICK**, Executor of the Will of Mary Etta Turley, Deceased, et al., Appellants,

v.

Marietta **WELLS**, Appellee.

Court of Appeals of Kentucky.

Dec. 13, 1957.

Robin Griffin, Harry B. Miller, Lexington, for appellants.

F. C. Bryan, Caswell P. Lane, Mt. Sterling, for appellee.

STEWART, Judge.

By this action, Marietta Wells, as plaintiff below, sought to reform a deed that was executed by her grandmother, Mary Etta Turley, on January 7, 1954, granting to her, subject to a life estate retained by Mary Etta Turley, a certain lot on the *west* side of North Queen Street in Mt. Sterling. On December 16, 1919, Mary Etta Turley purchased this particular parcel of ground but she sold it a few months thereafter by deed dated July 28, 1920. This is the property she undertook to convey unto Marietta Wells and there is no proof she ever reacquired this lot or ever owned any other property at any time on the west side of North Queen Street.

On March 29, 1954, another deed was made by Mary Etta Turley conveying an improved lot on the *east* side of North Queen Street, together with other real estate, to Elizabeth Ann Carter and on the same day Elizabeth Ann Carter reconveyed this prop-

erty to Mary Etta Turley for her lifetime with remainder to James Arthur Karrick, a defendant below. This piece of real estate on the east side of North Queen Street was bought by Mary Etta Turley on July 11, 1921, and was occupied by her as a home until her death. This property is referred to herein as the "home place", "117 North Queen Street" and the "home on North Queen".

Marietta Wells claims that by mutual mistake the wrong property was deeded to her, and that Mary Etta Turley intended to convey her the property on the *east* side of North Queen Street, namely, her home place at 117 North Queen Street.

The parties to this case are closely related to each other. James Arthur Karrick and Marietta Wells are grandchildren of Mary Etta Turley and both were raised in the home of the latter. Marietta Wells is the daughter by an earlier marriage of Lillian Bell Harp, one of the defendants in this case. Lillian Bell Harp is a daughter of Mary Etta Turley and is now married to a second husband. The record reveals that a strained relationship has existed for many years between Lillian Bell Harp and her daughter, Marietta Wells, which, in respect to Lillian Bell Harp, may be termed one of animosity.

The evidence in this case shows that Harold Wells, the husband of Marietta Wells, shortly before the conveyance first mentioned was executed, contacted Caswell Lane, an attorney in Mt. Sterling, to have him obtain from the records of the Montgomery County clerk's office a description, according to this witness, of the property known as "117 North Queen Street" in the above city and county. The Wells now and for several years have lived in Nicholasville. Lane when first approached refused to comply with Harold Wells' request until he had consulted with Mary Etta Turley, because he considered himself her attorney at the time and believed he could not also represent the Wells in this matter. A few days later Harold Wells

came back to him and Lane, then being satisfied it would be proper to perform the service in question, went to the county clerk's office and secured what he thought to be the correct description. This attorney testified in this connection: "I * * * took off from the record what I assumed to be *her home on North Queen* and had the description typewritten in my office and gave it to Mr. Wells." At the trial Lane frankly admitted he afterwards learned the description he procured was not the one to the home place of Mary Etta Turley.

The deed from Mary Etta Turley to Marietta Wells was prepared from the description Lane furnished Harold Wells by William H. Mackey, an attorney in Nicholasville. The instrument was then taken the early part of January, 1954, to Mary Etta Turley by both the Wells, accompanied by Roy Bishop of Nicholasville, a notary public for the state at large. Mary Etta Turley was at the time in a nursing home in Lexington. She was then eighty-two or eighty-three years old and she died two years later. Bishop was asked what transpired when the deed was executed by Mary Etta Turley. He testified: "Mrs. Turley was in the bed. I told her my business there; that I had a deed for her to sign, a deed to her home which she was signing away. She said, 'I know all about it.'" Bishop said he read all the contents of the deed to her except the description. After this she signed and acknowledged the deed.

Three other persons, one of whom was a man who had known Mary Etta Turley from forty to fifty years and two of whom were women who had been intimately associated with her, testified they heard Mary Etta Turley declare on several occasions, "I want Marietta Wells to have the home place". Two of these witnesses said these statements were made a short time before Mary Etta Turley was taken to the nursing home in Lexington. One however indicated she expressed such a wish some ten years back, and of course this remark was too remote in its relation to this case.

In December of 1953 Mary Etta Turley was moved by James Arthur Karrick to a nursing home in Lexington. Karrick was then living in the latter city. In 1951 Mary Etta Turley executed a will in which she devised the home she lived in on the east side of North Queen Street to Marietta Wells. As to the balance of her property, she willed one half of it to James Arthur Karrick and one half to Lillian Bell Harp. Caswell Lane, the attorney who drafted this will, made this statement bearing upon the testatrix' intentions: "She said that she wanted Marietta to have the home; that this was her home that she had been raised in." After she was moved to Lexington and placed in the nursing home, she executed a new will on February 10, 1954, in which she gave one half of all her property to James Arthur Karrick and the remaining one half to Lillian Bell Harp.

A summary of the evidence in behalf of appellants is that the deeds from Mary Etta Turley to Elizabeth Ann Carter and from the latter to James Karrick were prepared by Harry B. Miller, an attorney in Lexington. This attorney testified the two instruments were drafted from information furnished to him by Mary Etta Turley, and they were then taken to the nursing home in that city where Mary Etta Turley was an inmate. The attorney stated he carefully explained the import of the conveyances to Mary Etta Turley and the deeds were read twice to her before she executed the one to Elizabeth Ann Carter. Eva Dunn, the operator of the nursing home, testified she asked Mary Etta Turley if she had transferred a piece of property to her granddaughter, Marietta Wells, and she replied if she had done so she had no recollection of it, and if she had made such a deed she wanted to change it. This same witness said she heard Mary Etta Turley state on another occasion that she knew what she wanted to do with her property and what provisions she desired in the two deeds.

Upon submission of this cause to the trial judge he reformed the deed dated January 7, 1954, from Mary Etta Turley to Marietta Wells so as to vest in the latter the property situated on the east side of North Queen Street, namely, the home place of Mary Etta Turley. This appeal is from that ruling.

■ It is maintained Marietta Wells did not support her allegations of mutual mistake set forth in her complaint with proof that was clear and convincing. It is a well-recognized principle of law that before a written instrument can be set aside on the ground of mutual mistake the evidence must be clear and convincing. See Flimin's Adm'x v. Metropolitan Life Ins. Co., 255 Ky. 621, 75 S.W.2d 207; Lamastus v. Morgan's Committee, 178 Ky. 805, 200 S.W. 32; Whitt v. Whitt, 145 Ky. 367, 140 S.W. 570. A mutual mistake in respect to reformation is one in which both parties participate, each laboring under the same misconception. See Kane v. Hopkins, 309 Ky. 488, 218 S.W.2d 37.

■ It is our view the evidence shows rather conclusively that Mary Etta Turley intended to convey to Marietta Wells her home place, that is, the property on the east side of North Queen Street in Mt. Sterling. As a matter of fact, counsel for appellants point out in their brief that the parcel of land Mary Etta Turley attempted to deed to Marietta Wells on January 7, 1954, had not been owned by her since July 28, 1920, a period of over thirty-five years. This statement is virtually a concession on their part that a mistake was made by Mary Etta Turley when she undertook to convey to Marietta Wells property she did not own. That a mutual mistake was made by the grantor and the grantee is evident when we read the testimony of Caswell Lane, the attorney who endeavored to obtain a description of the property for inclusion in the deed under discussion. It will be recalled he stated that it was Mary Etta Turley's intention to convey to Marietta Wells her home place. Lane was fair minded enough to admit he had inadvertently se-

cured the wrong description, saying on this point that "I * * * took off from the record what I assumed to be her home on North Queen". The testimony of Roy Bishop, the notary public, and that of at least two other witnesses also points up the fact that Mary Etta Turley intended her home to be embraced in the conveyance to Marrietta Wells.

In the fairly recent case of McCowan v. McCowan, Ky., 243 S.W.2d 614, 615, it was alleged that the name of Bige McCowan was inserted as grantee in a certain deed by mistake and it was asked that the deed be reformed by the elimination of his name as a grantee. The county court clerk and the deputy clerk before whom the deed was acknowledged testified that the name of Bige McCowan was in the deed as a grantee when it was acknowledged. The appellant, Lena McCowan, and her brother, Leslie Taylor, refuted this testimony of the clerk and his deputy. In refusing reformation of the deed, this Court said: "Although appellant and her brother, Leslie Taylor, testify that the name of Bige McCowan was not in the deed when it was acknowledged, the testimony of the county court clerk, as well as the deputy clerk, must be given great weight. They apparently are disinterested witnesses, and no reason is advanced why they should have falsified their testimony."

Unquestionably great weight must be given to the testimony of Caswell Lane, the attorney who testified he committed an error when he procured the description for the deed to be executed to Marietta Wells, and to that of Roy Bishop, the notary public who stated that Mary Etta Turley unequivocally indicated to him she desired the deed he acknowledged to cover her home place. Not only were these men disinterested witnesses but, more than that, it is not shown that a single shred of their testimony was contradicted.

■ The rule requiring "clear and convincing proof" to reform a written instrument does not necessarily mean that there should be no contrariety in the evidence, for if it did the occasion for the application of the remedy of reformation would be rare indeed. See Trustees of First Christian Church of Ft. Thomas v. Macht, 228 Ky. 628, 15 S.W.2d 509. We believe, as did the trial judge, that a mutual mistake was made by the grantor and grantee when Mary Etta Turley executed the conveyance dated January 7, 1954. When the deed as prepared conveyed to Marietta Wells nothing because Mary Etta Turley did not own the property described, there is no way of escaping the fact that Mary Etta Turley at the time she executed the instrument was mistaken as to the lot which she sought to convey thereby.

■ The theory is next advanced that Marietta Wells was guilty of negligence because she waited some two years before she sought reformation of the deed. Actually, it was not until after the death of her grandmother, Mary Etta Turley, on February 7, 1956, that she discovered the flaw, and this occurred when James Arthur Karrick made claim upon her for the property. Then, upon ascertaining the facts, she promptly instituted this action.

In this case Marietta Wells was shown to be a person totally unfamiliar with legal descriptions contained in ordinary conveyances. Here, acting as a reasonable person would under the same circumstances, she relied upon an attorney to furnish her the correct description for the document she wanted prepared. She, being untrained in such matters, probably would not have detected the mistake in the description if she had examined it. This would especially hold true in this instance, since Mary Etta Turley owned only one piece of real estate, namely, her home place, on North Queen Street at the time.

■ Equity only requires that the party who seeks relief on the ground of mutual mistake shall have exercised the degree of diligence which may be fairly expected from a reasonable person. We conclude Marietta Wells met this test here.

Wherefore, the judgment is affirmed.