## UNITED STATES FIDELITY & GUARANTY COMPANY et al., Appellants,

v.

### Edgar HUNT, Appellee.

Court of Appeals of Kentucky.

June 17, 1960.

Fred G. Francis, Howard & Francis, Prestonsburg, for appellants.

W. W. Burchett, Clifford B. Latta, Prestonsburg, for appellee.

MILLIKEN, Judge.

This appeal was taken from a judgment pursuant to a jury verdict awarding the appellee $1,500 from each of the appellant insurance companies on two contracts of fire insurance on the same property. The only issue presented is whether the property destroyed was covered by the fire insurance policies and, if not, the appellants were entitled to judgment notwithstanding the verdict.

The policies of insurance, written by an insurance agent, Blaine Hall, described the property covered as follows: "on the one story, one family, frame, approved roof dwelling, situated E/S of Highway No. 1100, Woods, Ky. Floyd County." The appellee Hunt owned houses on opposite sides of Highway No. 1100. The house which burned down was located by an engineer as being North 20 East of the highway, while another house of the appellee, known as the Byrd Hill dwelling, was located southwest of the highway.

The evidence clearly discloses that the property meant to be insured by both parties was the Byrd Hill dwelling, and not the house which was destroyed by fire. The insured's (Hunt's) testimony as given in an affidavit a few days after the fire clearly reveals he intended to, and believed he had, insured the Byrd Hill dwelling. He was asked these questions and gave these answers:

"Q. It was your intention when you obtained the insurance to cover

the Byrd Hill dwelling? A. Yes. That was the house I thought I was paying the policy on * * *.

"Q. But your intention at the time you obtained the policy was to cover the Byrd Hill dwelling? A. Yes, that was my intention. I will be just as honest as I can about it * * *.

"Q. Why did you want the insurance to apply on the Byrd Hill dwelling rather than any other one? A. I figured that over there to be my most valuable property with the exception of the home I lived in."

At the trial, while Hunt's answers were not as direct, they do not contradict his answers quoted above. After Hunt stated that he had not read the policies after their delivery, the following questions were asked and answered by him:

"Q. You say if you had read them you would not have gotten into this? A. If I had read my policies I would have seen what it was right then.

"Q. And you would have had it corrected? A. I would have had it corrected or bought the insurance on other property.

"Q. In other words, you would have had it corrected and bought insurance on the Byrd Hill house? A. Yes, sir.

"Q. Then it was your intention all along that the insurance you took out from Blaine Hall was to be on the Byrd Hill house. Is that right? A. That is the impression I lived under for two years. I thought that my insurance was actually covered over there."

Blaine Hall, who wrote both of the policies, testified that the policies he meant to write were ones covering the Byrd Hill house. The appellee attempted to show that Hall actually did mean to write insurance on the house which burned down. Marie Skeans testified that when she lived in the now destroyed house Hall came to her house. Her testimony is as follows:

"Q. Go ahead and tell what you know about him writing insurance on this house, if you do? A. Well now, this is the way it was: He came to my house, he didn't ask no questions whatever; he didn't even come to my door but he looked at the house and he got back in the car.

"Q. Did he get out of the car? A. Yes, sir, he got out at the upper side of the road and looked and then he got back in the car. Well, he sat there awhile and he did something with some papers but I can't tell you what it was. Well, he went away and that evening about four o'clock, he drove back by my house and turned and went back.

"Q. Both times he was there was it the same day? A. Yes, sir."

This witness further admitted that she did not know what Hall was there for, and that she did not speak to him. Her testimony is silent on when the events to which she testified occurred.

 In light of the appellee's own testimony, it must be concluded that it was his intention to insure the Byrd Hill dwelling, and that this was the property meant to be insured under the policies written by Hall. Therefore, a court of equity will reform such contracts so as to make them accord with the intentions and agreement of the parties. Flimin's Adm'x v. Metropolitan Life Ins. Co., 255 Ky. 621, 75 S.W. 2d 207.

The testimony of both Hunt and Hall as to their intention to insure the Byrd Hill house instead of the one which burned is corroborated by other circumstances. Hunt had bought the 100-acre tract on which the three houses were located for $8,000 and needed $3,000 fire insurance to satisfy the bank holding the mortgage. Hunt estimated the Byrd Hill house to be worth $6,000 of the total $8,000 valuation,

 

thus leaving the other two houses admittedly worth less than the $3,000 insurance obtained.

We think the appellants were entitled to judgment notwithstanding the verdict as moved, and so hold.

The judgment is reversed with directions to enter judgment for the appellants reforming the contract to cover the Byrd Hill house in the future as prayed.