J. B. McCALLUM, JR., Administrator of the Estate of MRS. MAY McCALLUM v. OLD REPUBLIC LIFE INSURANCE COMPANY.

(Filed 14 June 1963.)

1. **Insurance § 7—**

    Insurance contracts, like other written instruments, may be reformed by equity for mutual mistake, inadvertence, or the mistake of one party superinduced by the fraud or inequitable conduct of the other.

2. **Insurance § 10—**

    The parties may agree upon the effective date of a policy of insurance, and if a policy is dated the contract ordinarily takes effect from such date unless a different date is specified therein, but the date is not conclusive and equity may reform the policy to specify a different date in proper instances to make the instrument conform to the intent of the parties or to prevent fraud.

3. **Pleadings § 12—**

    A pleading will be liberally construed on demurrer, and the demurrer admits for its purposes the truth of factual averments well stated and

the relevant inferences of fact reasonably deductible therefrom, but does not admit inferences or conclusions of law.

4. **Insurance §§ 7, 10— Complaint held to state cause of action to reform policy in regard to the term of coverage.**

A certificate of insurance under a group policy was issued for a term of twelve months to a borrower in the amount of the loan which was to be repaid in ten months. The lender's draftsman typed the figures "12/31/58" as the effective date and "12/31/59" as the expiration date of the certificate, but the papers executed by the borrower were not returned to the lender until the first or second of the following January and the loan was not made until the third. Plaintiff alleged that the borrower intended the effective date of the certificate to be the date of the loan and that the dates inserted in the certificate were inserted through mutual mistake or mistake induced by fraud. *Held:* The amended complaint states a cause of action for reformation and it was error to sustain demurrer thereto.

5. **Same; Reformation of Instruments § 2—**

The failure of an 83 year old insured, in feeble health, to read her certificate of term insurance as to its effective date and expiration date, *held* not to bar as a matter of law an action to reform the certificate to make it conform with the intention of the parties as to the effective and expiration dates.

Appeal by plaintiff from *Bickett, J.,* August Civil Term 1962 of Robeson.

Civil action to reform and enforce a certificate of insurance issued under a Creditor's Group Insurance Policy, heard upon a demurrer to an amended complaint.

From a judgment sustaining the demurrer, plaintiff appeals.

*King & Cox by Jennings G. King for plaintiff appellant.*
*Henry & Henry and Vance B. Gavin for defendant appellee.*

Parker, J. This is a summary of the essential allegations of the amended complaint, except when quoted:

The defendant, Old Republic Life Insurance Company, under the terms of a Creditor's Group Insurance Policy issued by it to Lumberton Production Credit Association, agreed to insure the lives of certain debtors of such association, and this association was authorized, under the terms of this master policy, to furnish to certain of its debtors individual certificates of insurance describing the indemnities to which such debtors were entitled, as set out in the master policy. A certificate of insurance so issued was payable, upon the death of the insured, to the Lumberton Production Credit Association as beneficiary as its

interest might appear, to be applied by the association to the discharge of the indebtedness then owing by the debtor to the association. Insurance proceeds remaining after the payment of such indebtedness, if any, were payable in the event of death of the debtor to the estate of the debtor or in lieu thereof, at the option of defendant, to certain specified persons by reason of their having incurred expenses occasioned by support, illness, or burial of the insured debtor.

On 30 December 1958 Mrs. May McCallum and her son, J. B. McCallum, Jr., requested the Lumberton Production Credit Association to make them a loan in the amount of $3,000 to be repaid on 1 October 1959, which was to be secured in part by a certificate of insurance upon the life of Mrs. May McCallum in the amount of $3,000, to be issued by defendant to the association under its Creditor's Group Insurance Policy. In response to their request, employees of the association in its office in Lumberton typed and delivered to J. B. McCallum, Jr., an insurance application form which they dated 30 December 1958, together with a note and crop lien and chattel mortgage dated 30 December 1958, so that he might take these instruments to Maxton to be executed and delivered by his mother at a later date.

Mrs. May McCallum, on the night of 30 December 1958, signed and acknowledged these instruments before a notary public, and they were returned to the association on 1 or 2 January 1959.

On 3 January 1959 the Lumberton Production Credit Association accepted these instruments, and made to Mrs. May McCallum and her son a loan in the amount of $3,000. The crop lien and chattel mortgage were filed for recordation on 6 January 1959, and were duly registered that day in the Robeson County Registry.

On 3 January 1959, the day the loan was made, defendant executed and delivered to Mrs. May McCallum, under its Creditor's Group Insurance Policy, certificate of insurance PLD No. 520,909, a copy of which is attached to the amended complaint and made a part thereof, and the association deducted from the proceeds of its loan to the McCallums and remitted to defendant the sum of $150 representing the premium paid to defendant for its certificate of insurance insuring the life of Mrs. May McCallum for one full year in the amount of $3,000 from the date upon which its certificate of insurance was issued and delivered, payable as provided by the terms of its Creditor's Group Insurance Policy and certificates of insurance issued pursuant thereto, as set forth above.

The certificate of insurance issued to Mrs. May McCallum on 3 January 1959 contained the following words and figures:

"Effective date:   12-31-58

Expiration date: 12-31-59

Months: 12 Mo."

The words before the colons were parts of the printed form; the figures and "Mo." after the colons were inserted by the use of a typewriter.

"* * *all parties intended that the certificate of insurance should be issued and dated at the time that the loan was actually made; and that it was not their intention that the certificate should be dated prior to the time when it was actually issued and delivered. The true agreement between the parties, as the plaintiff is informed and believes, was that the effective date of the certificate should be January 3, 1959; that the expiration date should be January 3, 1960, and that the term should be 12 months. The certificate, as written, did not truly and correctly embody the agreement between Mrs. May McCallum and the defendant, in that the effective date was recited to be 12/31/58, and the expiration date was recited to be 12/31/59.

"* * *the figures '12/31/58' and the figures '12/31/59' were inserted in the certificate through inadvertence upon the part of the draftsman who filled out the printed form and by mutual mistake upon the part of the defendant and Mrs. May McCallum; or, if the figures were not inserted by mistake on the part of the defendant, then that the defendant caused them to be inserted with the intent to defraud plaintiff's intestate by dating the policy back to a time when it could not possibly have been in force and effect."

When the certificate of insurance was issued, Mrs. May McCallum was 83 years old and very feeble, and this was well known by defenddant's agent. By reason of her age and condition, she did not read the certificate of insurance, and did not know the certificate of insurance had a date prior to its issuance and delivery, and such was not known by her during her life.

The loan by the association to Mrs. May McCallum and her son was paid in full on 4 December 1959.

Mrs. May McCallum died on 2 January 1960, and under the terms of defendant's certificate of insurance, the amount of the insurance is payable to her estate. Plaintiff is the administrator of her estate. Defendant refuses to pay any part of its certificate of insurance.

Defendant demurred to the amended complaint on the ground that it alleged no facts constituting mutual mistake of the parties, and no facts constituting a mistake on the part of Mrs. May McCallum induced by fraud on the part of the defendant, and no facts constituting fraud on the part of the defendant, which would entitle plaintiff to reform and enforce the certificate of insurance sued upon.

The Court said in *Insurance Co.. v. Lambeth,* 250 N.C. 1, 15, 108 S.E. 2d 36, 45, quoting from *Williams v. Insurance Co.,* 209 N.C. 765, 769, 185 S.E. 21, 23, and citing additional authorities in support of the quotation from that case: " 'It is well settled that in equity a written instrument, including insurance policies, can be reformed by parol evidence, for mutual mistake, inadvertence, or the mistake of one superinduced by the fraud of the other or inequitable conduct of the other.' *Williams v. Insurance Co.,* 209 N.C. 765, 769, 185 S.E. 21; 29 Am. Jur., Insurance § 241; 44 C.J.S., Insurance §§ 278, 279; 7 Appleman, Insurance Law and Practice, § 4256." To the same effect, 76 C.J.S., Reformation of Instruments, sec. 30; 45 Am. Jur., Reformation of Instruments, sec. 62.

In 76 C.J.S., Reformation of Instruments, sec. 29, b, (1), pp. 371-2, it is said: "Fraud or inequitable conduct, to warrant relief by way of reformation, has been held to consist in doing acts, or omitting to do acts, which the court finds to be unconscionable, as * * * in drafting, or having drafted, an instrument contrary to the previous understanding of the parties and permitting the other party to sign it without informing him thereof* * *."

As a general rule, the parties may agree as to the terms and conditions and effective date of a policy of insurance, provided, of course, that they do so voluntarily, and are not influenced by fraud, misrepresentation or similar elements, and that the terms and conditions are not in violation of legal rules and requirements. *Lentin v. Continental Assurance Co.,* 412 Ill. 158, 105 N.E. 2d 735, 44 A.L.R. 2d 463; 29 Am. Jur., Insurance, sec. 310; 44 C.J.S., Insurance, sec. 223. The parties may expressly agree that a policy of insurance be antedated and take effect from that date. *Mutual Life Ins. Co. v. Hurni Packing Co.,* 263 U.S. 167, 68 L. Ed. 235, 31 A.L.R. 102; Couch on Insurance, 2d Ed., Vol. 1, sec. 8:2, Dating Policy. In this section of Couch it is stated: "It is customary, but not necessary, to date policies. If the policy is dated, however, the contract of insurance is deemed to have been made as of that date, and takes effect therefrom, unless a different day is specified therein, or it is apparant from the construction of the contract that another day was intended. * * *The date is not conclusive evidence of the fact that a contract of insurance was completed and was to become effective as of the date written in the policy, and is not necessarily the effective date of the policy."

G.S. 1-151 requires us to construe liberally a pleading challenged by a demurrer with a view to substantial justice between the parties. In passing on defendant's demurrer, we are confined to a consideration of the amended complaint, and the certificate of insurance made a part

thereof. *Moore v. W O O W, Inc.,* 253 N.C. 1, 116 S.E. 2d 186; *Little v. Oil Corp.,* 249 N.C. 773, 107 S.E. 2d 729. The demurrer to the amended complaint admits, for the purpose of testing the sufficiency of the pleading, the truth of factual averments well stated and relevant inferences of fact reasonably deductible therefrom. But it does not admit inferences or conclusions of law asserted by the pleader. *Hedrick v. Graham,* 245 N.C. 249, 96 S.E. 2d 129; Strong's N. C. Index, Vol. 3, Pleadings, pp. 625-627. The admissions inherent in a demurrer are not absolute, because the conditional admissions made by a demurrer forthwith end if the demurrer is overruled. *Erickson v. Starling,* 235 N.C. 643, 71 S.E. 2d 384.

The demurrer admits all the allegations of fact in the amended complaint in respect to the time and manner in which Mrs. May McCallum and her son applied for a $3,000 loan from Lumberton Production Credit Association to be paid within ten months, and for insurance upon the life of Mrs. May McCallum, an 83-year-old woman in very feeble health, whose age and physical condition were well known to defendant's agent, to secure in part the requested loan, and also in respect to the dates and other transactions alleged therein. That Mrs. McCallum executed a note and crop lien and chattel mortgage to secure in part the requested loan, and applied for insurance to secure in part the requested loan, and all these instruments were returned to the association on 1 or 2 January 1959. That on 3 January 1959 the association accepted these instruments and made Mrs. McCallum and her son the requested loan, and on this same day, 3 January 1959, Mrs. McCallum paid to defendant a premium of $150 for the certificate of insurance insuring her life for one year in the amount of $3,000. The agreement and intention of the parties were that the certificate of insurance should be dated and issued at the time when the loan by the association was actually made, but in spite of this agreement and intention of the parties, through inadvertence upon the part of the draftsman and by mutual mistake of the parties, the effective date of the certificate of insurance was written therein to be 31 December 1958 and its expiration date 31 December 1959, which does not express the real agreement and intention of the parties. We consider these allegations as to the agreement and intention of the parties to be allegations of subsisting facts, and not mere conclusions. In *Finishing and Warehouse Co. v. Ozment,* 132 N.C. 839, 44 S.E. 681, the Court held that in an action to reform a deed for mistake it was competent for a witness to testify as to the intention of the parties. That the loan was paid in full on 4 December 1959, and that Mrs. May McCallum died on 2 January 1960. That Mrs. McCallum by reason of her age and con-

dition did not read the certificate of insurance, and died without know-
ing that its effective date as written in the certificate of insurance was
31 December 1958.

This Court speaking by Brown, J., in *Shook v. Love,* 170 N.C. 99,
86 S.E. 1007, said:

> "The power of a court of equity to reform written instruments
> so as to speak the real contract of the parties is beyond question,
> but the power is exercised along well-known lines. An instrument
> will not be reformed because of the mistake of one of the parties
> unless brought about by the fraud of the other, but will be re-
> formed where the mistake is mutual upon the part of all the part-
> ies, or when it is the mistake of the draftsman who is entrusted
> to prepare the instrument."

The amended complaint alleges sufficient allegations of fact for
reformation of the certificate of insurance on the ground of mutual
mistake of the parties or a mistake of Mrs. McCallum superinduced
by inequitable conduct on the part of defendant in drafting or having
drafted the effective date and the expiration date in the certificate of
insurance contrary to the previous agreement and intention of the
parties to constitute a cause of action for reformation, and to sur-
vive the challenge of defendant's demurrer, unless, as defendant con-
tends, Mrs. May McCallum's failure to read the certificate of insur-
ance bars the action for reformation.

The conclusion we have reached is sustained by *Kentucky Home
Mut. Life Ins. Co. v. Marshall,* 291 Ky. 120, 163 S.W. 2d 45, as modi-
fied on denial of rehearing 9 June 1942. This was an action to reform
a certificate issued under a group policy by Sylvia Marshall, bene-
ficiary of a certificate of insurance issued to John Marshall, deceased,
against Kentucky Home Mutual Life Insurance Company. From a
judgment for plaintiff, defendant appealed. The judgment was affirmed.
In its opinion, the Court said:

> "We turn now to the question of the Company's demurrer to
> Mrs. Marshall's petition. It is insisted that an insurance contract
> can be reformed only because of mutual mistake of the parties, or
> mistake, inadvertence or accident on one side, and fraud or
> negligible conduct on the other, *Flimin's Adm'x v. Metropolitan
> Life Ins. Co.,* 255 Ky. 621, 75 S.W. 2d 207, and that Mrs.
> Marshall's petition did not allege facts sufficient to meet either
> proposition. We think otherwise. The petition set forth the time
> and manner in which Marshall applied for membership in the As-

sociation, and for insurance, and all the dates and transactions which we have heretofore reviewed in connection with the policy. It was alleged also that the policy became effective on February 23, 1939, the date it was issued by the Company and delivered to the Association, and that the Company wrongfully and without legal right postdated the certificate to March 9th. The Company insists that the allegations just mentioned were only conclusions of the pleader, and also that at most the petition shows only a unilateral mistake on the part of Marshall. Such a mistake is not a ground for reformation. *Kentucky Title Company v. Hail,* 219 Ky. 256, 292 S.W. 817. We are not in accord, however, with the Company's interpretation of the petition to the effect that it is impossible to determine whether Mrs. Marshall sought a reformation of the contract on the ground of a mutual mistake, or on the ground of fraud or inequitable conduct on the part of the Company. It is our view, when the petition is examined as a whole, that there was a charge of inequitable conduct on the part of the Company in postdating the certificate. We have already pointed out that the Company had no right to do this, under the circumstances, though it must be admitted that the master policy could be so amended or changed as to permit the postdating of certificates in the future. We do not mean to say that the Company maliciously singled out Marshall and deliberately perpetrated a fraud upon him, but rather that the mistaken belief on the part of the Company that it could postdate policies brought about an inequitable result in so far as new members were concerned. This constituted inequitable conduct on the part of the Company, and, as indicated, we think the petition alleged facts which warranted the reformation of the certificate. We have already indicated that Marshall had every right to believe, and certainly he did believe, that his insurance would become effective upon the approval of his application and the payment of his advance premium. As we have noted, the master policy provided, 'Upon the approval of such application by the Company and payment of the advance premium to cover, new members will be insured hereunder.' "

The conclusion we have reached is also sustained by the following cases: *Kansas City Life Ins. Co. v. Cox,* 104 F. 2d 321; *Flickinger v. Farmers' Mut. Fire & Lightning Ins. Ass'n. of Story County, Iowa,* 136 Iowa 258, 113 N.W. 824; *Bleam v. Sterling Ins. Co.,* 360 Mich.

208, 103 N.W. 2d 466; *Prudential Fire Ins. Co. v. Stanley,* 191 Okla. 506, 131 P. 2d 88.

The Court said in *Setzer v. Insurance Co.,* 257 N.C. 396, 126 S.E. 2d 135:

> "The North Carolina Court has frequently said that where no trick or device had prevented a person from reading the paper which he has signed or has accepted as the contract prepared by the other party, his failure to read when he had the opportunity to do so will bar his right to reformation."

We have held in *Bank of Union v. Redwine,* 171 N.C. 559, 88 S.E. 878, and in *Finishing and Warehouse Co. v. Ozment, supra,* that a person's failure to read an instrument before signing it does not necessarily or always prevent reformation. To the same effect see 45 Am. Jur., Reformation of Instruments, sec. 79; 29 Am. Jur., Insurance, p. 712; Anno. 81 A.L.R. 2d, pp. 16-18; 76 C.J.S., Reformation of Instruments, pp. 399-400; Malone, "The Reformation of Writings under the Law of North Carolina," 15 N.C. L.R. 155, 174-6. On page 176 Malone, after reviewing a number of our decisions, states: "Certainly the rule that failure to read is a positive bar to recovery cannot be accepted at its face value."

In *Coppersmith v. Insurance Co.,* 222 N.C. 14, 21 S.E. 2d 838, which is cited in *Setzer v. Insurance Co., supra,* in support of the part we have quoted, it appeared that plaintiff requested his agent to obtain a policy of fire and marine insurance; that defendant issued a policy which provided that $1,000 should be deducted from the total amount of any claim, whereas plaintiff contended that the deduction clause should not have applied to a loss by fire; that the defendant sent the policy to plaintiff's insurance agent, who retained it; and that plaintiff's officers did not see it until a loss by fire occurred 20 days after it was issued. The court denied reformation because there was no mutual mistake. The court then said that plaintiff had full opportunity to read the policy but did not do so, and that equity will not afford relief to those who sleep on their rights or whose plight is traceable to that want of diligence which may fairly be expected from a reasonable and prudent man.

On 3 January 1959 Mrs. McCallum paid defendant a premium of $150 for a certificate of insurance upon her life for one year. It would seem that no reasonable and prudent person exercising due diligence would anticipate that when the insurance was issued to secure in part her loan from the association it would bear an effective date several

days before the loan was actually made to her and several days before the certificate of insurance was issued. No rights of innocent third parties are involved. Defendant will not be prejudiced by reformation of the effective date and the expiration date of the certificate of insurance so as to conform to the agreement and intention of the parties, because it will merely be required to pay what it contracted to pay, and for which insurance it has been paid a premium of $150. Considering the admissions made by the demurrer of all well-pleaded facts and all reasonable inferences to be drawn therefrom, and that when the certificate of insurance was issued Mrs. McCallum was 83 years old and very feeble, which condition was well known to defendant's agent, and indulging the reasonable inference that her very feeble condition did not improve before her death on 2 January 1960, it is our opinion that Mrs. May McCallum did not have a fair opportunity to read the certificate of insurance. Consequently, a court of equity should not bar its doors to this action for reformation on the ground that Mrs. McCallum did not read the certificate of insurance.

The amended complaint on its face shows no ratification or waiver or estoppel as a matter of law by Mrs. McCallum so as to bar the action. 45 Am. Jur., Reformation of Instruments, sec. 75; 76 C.J.S., Reformation of Instruments, secs. 31, 32.

We are concerned here only with pleadings. The Creditor's Group Insurance Policy issued by defendant to the association is not in the record.

The demurrer was improvidently sustained.

Reversed.