M. P. HUBBARD AND COMPANY, INCORPORATED, v. W. H. HORNE, NORTH CAROLINA BANK AND TRUST COMPANY, AND PLANTERS NATIONAL BANK AND TRUST COMPANY, TRUSTEE.

(Filed 21 September, 1932.)

1. **Reformation of Instruments A a—Instrument may be reformed for mutual mistake or mistake induced by fraud.**

The doctrine of reformation of a written instrument is usually applied only for mutual mistake of all the parties, or mistake of one induced by the fraud of the other, and extends in its application to the draftsman of the instrument, a mistake usually being one concerning the contents or legal effect of the instrument, and while a mistake of law *simpliciter* is not ground for reformation, if the mistake of law is induced or accompanied by inequitable conduct of the other party, equity will usually grant the relief, and while all varieties of fraud cannot be included in a single formular, the term is broad enough to include any act, omission or concealment in breach of equitable duty.

2. **Evidence J d—In action for reformation of instrument parol evidence is admissible to establish mutual mistake or fraud.**

In an action for reformation of an instrument parol evidence is admissible to establish mutual mistake or mistake on one side induced by fraud, this being an exception to the parol evidence rule.

**3. Trial D a—Where evidence is conflicting nonsuit is properly denied.**

In a suit on a crop lien and chattel mortgage a motion for judgment as of nonsuit on a cross-bill for reformation of the instrument will be denied when the evidence thereon raises inferences favorable to both parties, and in this case the evidence of mutual mistake or of mistake on one side induced by fraud on the other is held sufficient to be submitted to the jury.

**4. Trial E c—Conflicting instructions as to quantum of proof will be held for reversible error.**

The quantum of proof required for the reformation of a written instrument is clear, strong and convincing proof, and where the elements of this equitable relief are embodied in two issues a charge correctly stating the quantum of proof on one issue, but upon the other charging that there must be a preponderance of the evidence, will be held for reversible error, the instructions tending to confuse the jury as to the rule applicable.

**5. Appeal and Error J e—Prejudicial error in regard to one issue held not rendered harmless by answer to another issue.**

Where the elements for the equitable relief of reformation are submitted to the jury in two distinct issues, an error in the charge in respect to the quantum of proof on one issue will not be held harmless because the quantum of proof necessary was correctly stated in the charge on the other issue, since, if the issues were synonymous, the Court cannot say which of the conflicting instructions the jury followed, and if the issues were not synonymous, error relating to one of them would be material and prejudicial.

APPEAL by plaintiff from *Cranmer, J.,* at February Term, 1932, of NASH. New trial.

This is a controversy between the parties as to the priority of liens executed by the defendant Horne. The following verdict reveals the nature of the action:

1. Did defendant Horne execute and deliver to defendant bank a crop lien and chattel mortgage securing $15,000 which was filed for registration on 6 February, 1930? Answer: Yes.

2. Did the register of deeds of Edgecombe County inadvertently fail to index said instrument until 21 November, 1930? Answer: Yes.

3. Did plaintiff in April, 1930, and in July, 1930, agree with defendant Horne to advance him fertilizer for year 1930 upon crop liens and chattel mortgage to be subject to defendant bank's prior lien of $15,000 as alleged in the answer? Answer: Yes.

4. Was a provision subjecting plaintiff's liens to the lien of defendant bank omitted by mutual mistake of Horne and plaintiff's agent as to proper registration of the bank's paper, or by such mistake on part of Horne accompanied by fraudulent concealment on part of plaintiff's agent as alleged in answer? Answer: Yes.

5. What amount is due defendant bank upon its crop lien for agricultural advances? Answer: $9,962.92.

6. What amount is due defendant bank upon chattel mortgage upon implements and livestock? Answer: $6,900.17.

7. What amount is due plaintiff upon its agricultural lien for advances? Answer: $6,779.08.

8. What amount is due plaintiff upon its chattel mortgage? Answer: $4,923.90 with interest from 15 April, 1930.

9. What was value of the livestock seized and sold by plaintiff? Answer: $1,285.42.

10. What is amount of net proceeds of crop held by Planters National Bank and Trust Company as stakeholder? Answer: $9,832.22.

By consent the court answered all the issues except the third and fourth, which were submitted to the jury.

In the answers filed by Horne and the North Carolina Bank and Trust Company it is alleged that Horne, being indebted to the corporate plaintiff, made an agreement with it in 1930 that the plaintiff would furnish him fertilizers of the value of $6,764.20 and accept his note for $11,848.12, which included the bill for fertilizers and the amount of an antecedent indebtedness, to be secured by a second crop lien and chattel mortgage on the property described in the plaintiff's first exhibit, subject to a prior agricultural lien and chattel mortgage on the same property in favor of the North Carolina Bank and Trust Company, of Rocky Mount, in the sum of $15,000. It is alleged that the plaintiff's agent and attorney prepared the lien and chattel mortgage for signature by Horne and that he inserted a covenant that the property therein described was free from encumbrance, and did not provide that the lien should be subject to the prior lien of the North Carolina Bank and Trust Company; that upon Horne's objection the plaintiff's agent replied that he had omitted this provision because the registration of the papers would disclose the priority; that the defendants were convinced by the certificate of registration written on the paper held by the North Carolina Bank and Trust Company that the instrument had been legally registered but ascertained in the fall of 1930 that it had not been duly indexed; that the plaintiff's agent did not say anything to raise a doubt or question in the mind of the defendants as to the regularity of the registration, and that Horne understood from his remarks that the registration made the bank's paper a first lien; that Horne relied upon this statement and affixed his signature to the plaintiff's lien believing that it was subject to the prior lien of the bank; that Horne executed and delivered to the plaintiff another lien on his crops drafted by the plaintiff's agent which contained no provision that it was subject

to the lien held by the bank, although Horne understood that this paper was to be subordinate to the lien of the bank in like manner with the first.

It is further alleged that the provision making the plaintiff's liens subject to the lien of the bank was omitted by the draftsman, either through a mistake of fact as to the proper registration of the bank's paper, common to both parties, or through a mistake of fact in the mind of Horne and the inequitable conduct of the plaintiff's agent or the draftsman in not disclosing the mistake.

Judgment for defendants and appeal by plaintiff upon assigned error.

*Cooley & Bone and James W. Grissom for plaintiff.*
*Donnel Gilliam, G. M. Fountain and Battle & Winslow for defendants.*

ADAMS, J. The defendants W. H. Horne and the North Carolina Bank and Trust Company denied the plaintiff's alleged priority of liens and filed a cross-bill praying reformation of the instruments under which the plaintiff claims. It is not questioned that courts of equity have jurisdiction to correct written instruments which have been erroneously framed so that they shall express the real meaning and intention of the parties; but the plaintiff denies that the evidence is sufficient to justify the reformation of his papers. This position calls for an inspection of the record in the light of principles administered in courts of equitable jurisdiction.

The doctrine of reformation is usually applied to cases in which there has been mutual mistake of the parties or mistake by one of the parties and fraud by the other. This equity extends to the draftsman who writes the agreement. *Sills v. Ford,* 171 N. C., 733.

The phrase "mutual mistake" means a mistake common to all the parties to a written instrument and usually relates to a mistake concerning its contents or its legal effect. Eaton on Equity, sec. 315; 2 Story's Equity Jurisprudence (14th ed.), sec. 978. Pomeroy defines "mistake" as a mental condition, conception, or conviction of the understanding which influences the will and leads to some outward physical manifestation. It is distinguished from fraud by the absence of knowledge and intention. He classifies mistakes as those of fact and those of law, suggesting that it is sometimes difficult to ascertain whether in a particular instance the mistake is purely one of law or one of law and fact in combination. 2 Pomeroy's Equity Jurisprudence, sec. 839 *et seq.* A mistake of law simpliciter, "pure and simple," is not adequate ground for reformation; but if a mistake of law is induced or accompanied by inequitable conduct of the other party equity will interpose its aid and

administer relief. *Ibid.,* secs. 842, 845. No single formula includes all varieties of fraud, but the general term is broad enough to include any act, omission, or concealment in breach of an equitable duty; for in equity many acts are deemed fraudulent which in law are not generally so considered.

Of course mistake or fraud may be established by parol evidence on the familiar principle that mistake, fraud, surprise, and accident furnish exceptions to the general rule that parol evidence is not admissible to vary the terms of a written instrument. *Lee v. Brotherhood,* 191 N. C., 359; *Gray v. Mewborn,* 196 N. C., 770.

Tested by these principles the evidence offered by the defendants as ground for reformation was appropriately submitted to the jury. It tends to show that before the contract in question was made Horne told the president of Hubbard and Company that he had given the bank a crop lien for $15,000 to which the plaintiff's lien must be subordinate; that before signing the papers he noticed the omission of this provision and mentioned the fact to the plaintiff's agent; that the agent knew that the lien previously given to the bank had not been legally registered and lulled Horne into a sense of security by saying that the question of priority would be determined by the registration of the respective liens; that Horne learned of the defective registration in the fall of 1930; and that he would not have executed the plaintiff's papers had he been informed of all the facts.

Unquestionably there is evidence in support of the plaintiff's contention that Horne signed the papers with knowledge of all the circumstances; but as a legal proposition we are concerned only with the obvious fact that different inferences may reasonably be drawn from the testimony—inferences favorable to the plaintiff and others favorable to the defendants. In these circumstances the plaintiff's motion to dismiss the cross-bill as in case of nonsuit was properly denied. *Warehouse Co. v. Ozment,* 132 N. C., 839; *King v. Hobbs,* 139 N. C., 170; *Bank v. Redwine,* 171 N. C., 559; *Hunter v. Sherron,* 176 N. C., 226.

We are of opinion, however, that in his instructions the trial judge made an error which was prejudicial to the plaintiff. Only the third and fourth issues were submitted to the jury, and these were intended to embrace the elements which enter into the doctrine of reformation. It is a settled principle that all the essential elements must be proved by evidence which is clear, strong, and convincing. A bare preponderance of evidence is not enough. *Ely v. Early,* 94 N. C., 1; *King v. Hobbs, supra; Cedar Works v. Lumber Co.,* 168 N. C., 391; *Lloyd v. Speight,* 195 N. C., 179. Whether the evidence is of this character is a matter to be determined by the jury. *Archer v. McClure,* 166 N. C., 140; *Sills v. Ford, supra.*

The elements of equitable relief, instead of being embodied in a single issue, were separated into parts and submitted in two distinct issues. Let us concede that with reference to the fourth issue the court correctly stated the quantum of proof: was it correctly stated in reference to the third? As to the latter the court gave this instruction: "If the defendants have satisfied you by the greater weight of the evidence that there was such an agreement, then it would be your duty to answer the first (third) issue yes." The plaintiff excepted for the assigned reason that the proof must have been, as on the fourth issue, clear, cogent, and convincing.

The defendants say that the error, if any, was harmless, that the third issue is formal and was intended merely to give the background of the case, and, indeed, that it may be disregarded because all essential elements are contained in the fourth issue. If the third issue had been omitted this argument would have been more persuasive. The "agreement" in the third issue and the "provision" in the fourth are not necessarily synonymous. If they are, the instructions on the two issues are inconsistent. Which of them did the jury follow? If they are not synonymous, the fourth issue cannot be treated as a mere illumination of the third. The agreement must have been established as a necessary element of relief before a "provision" based upon the agreement could be made a part of the written instrument.

For error in the charge the plaintiff is entitled to a new trial on the third and fourth issues only, the others having been answered by consent. *Benton v. Collins,* 125 N. C., 83; *Lumber Company v. Branch,* 158 N. C., 251.

New trial.