AUDREY CARTER, Plaintiff v. WEST AMERICAN INSURANCE CO., GRAHAM UNDERWRITERS AGENCY, INC., and FRANK BIGGERSTAFF, Defendants

No. COA07-781

(Filed 20 May 2008)

**1. Appeal and Error— violations of Rules—raised in brief— not considered**

Defendant's argument that plaintiff's appeal should be dismissed because of violations of the Rules of Appellate Procedure was not addressed where defendant attempted to raise this motion in a brief rather than in accordance with Rule 37 of the Rules of Appellate Procedure.

**2. Insurance— replacement value of widow's house—equitable reform of policy—denied**

Plaintiff did not provide a factual basis to support equitable reformation of an insurance policy on a house destroyed by a fire where she had requested fifteen years earlier that she be provided with the same insurance her deceased husband had carried, there was no evidence of any action by defendants to change from the type and amount of coverage that had been provided to the husband, the coverage was regularly adjusted for inflation and was for more than 92% of the home's value according to an appraisal less than two years before the fire, the coverage amount was clearly stated on the face of the policy, and there is no evidence that plaintiff was not able to understand the policy.

**3. Insurance— fiduciary duty of agent to procure policy—previous policy continued—summary judgment for agent**

Summary judgment was properly granted for defendant-insurance agent on a claim that he had breached a fiduciary duty to procure insurance for plaintiff that covered the replacement cost of her home. There was no evidence (except evidence from plaintiff's affidavit which was disregarded) that the agent gave an affirmative assurance to procure an insurance policy, other than to renew the policy plaintiff's deceased husband had purchased, and there is no evidence that the deceased husband had purchased a policy other than the one in effect on the date of the fire.

CARTER v. WEST AM. INS. CO.

[190 N.C. App. 532 (2008)]

**4. Unfair Trade Practices— insurance coverage—no evidence of damages—summary judgment for defendant**

The trial court did not err by granting summary judgment for defendants on a claim for unfair and deceptive trade practices arising from the insurance coverage of a house fire where plaintiff did not forecast evidence that she was injured by any unfair or deceptive act on the part of defendants.

Appeal by plaintiff from order entered 27 November 2006 by Judge W. Osmond Smith, III, in Superior Court, Alamance County. Heard in the Court of Appeals 9 January 2008.

*Law Offices of Jonathan S. Dills, P.A. by Jonathan S. Dills, for plaintiff-appellant.*

*Hedrick, Gardner, Kincheloe & Garofalo, L.L.P., by Reid Russell, for defendant-appellee West American Insurance Company.*

*Teague, Rotenstreich, Stanaland, Fox & Holt, LLP, by Stephen G. Teague, for defendant-appellee Graham Underwriters Agency, Inc.*

STROUD, Judge.

Plaintiff Audrey Carter appeals from the trial court order granting summary judgment in favor of defendants West American Insurance Company, Inc. ("West American") and Graham Underwriters Agency, Inc. ("Graham") as to all claims. For the following reasons, we affirm.

I. Factual Background

The evidence in the record, drawing all inferences in favor of plaintiff, *Collingwood v. G. E. Real Estate Equities*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989), tends to show the following: From 1965 to 2001, plaintiff's home was insured under policies procured by defendant Graham, an insurance agent. Plaintiff's husband, Haywood Jackson Carter ("Mr. Carter" or "Haywood"), handled all of the family's insurance matters until his death in 1985. Sometime before Mr. Carter died, he told plaintiff that the home was insured with "replacement insurance." Shortly before Mr. Carter died, plaintiff had the carpet in her home replaced by insurance because of water damage. The insurance adjuster who handled the claim told her at that time that she had "replacement insurance." After Mr. Carter died, plaintiff told Mary Uttley, an employee of defendant Graham, "when [you] writ[e]

the insurance [you] kn[ow] what Haywood always did, and he believed in good coverage and [you] just . . . cover it."

From February 1991 to February 2001, plaintiff's home was insured under a policy issued by defendant West American which was procured for plaintiff by defendant Graham. The dwelling coverage amount of the policy regularly increased to reflect current local construction costs. Those increases amounted to, approximately, four percent in February 1997, three percent in February 1998, one percent in February 1999, and four percent in February 2000. As of 25 July 2000, the dwelling coverage on plaintiff's home was one hundred nineteen thousand five hundred dollars ($119,500).

Plaintiff's home was appraised on 25 August 1998 for the purpose of re-financing. The total estimated "cost new" on the appraisal was one hundred twenty-nine thousand four hundred ninety-six dollars ($129,496). Graham was not advised of the appraisal.

On 25 July 2000, plaintiff's home suffered extensive damage from a fire which started in an electrical outlet, rendering the home uninhabitable. The fire was reported to West American the same day. On or about 14 August 2000, plaintiff's son Larry Carter estimated the cost to replace the house at over two hundred thousand dollars ($200,000), and indicated he would sue on account of plaintiff being underinsured. In October 2000, West American offered to pay plaintiff $119,500, the limit of her policy, for the loss of her dwelling. She refused. On or about 11 December 2000, plaintiff hired counsel to represent her with respect to her insurance claim.

On 14 June 2001, Ohio Casualty Group (OCG), the parent company of West American, tendered a check to plaintiff in the amount of one hundred twenty-five thousand four hundred seventy-five dollars ($125,475). The memorandum on the face of the check read:

SETTLEMENT OF FIRE AS FOLLOWS:
DWELLING                      $119,500.00
DEBRIS REMOVAL            $5,975.00
REFLECTS TOTAL RECOVERABLE UNDER
THESE COVERAGES

By letter dated 31 October 2001, plaintiff, through her attorney, objected to the wording of the memorandum and requested that OCG reissue the check without the memorandum. OCG reissued the check on 31 January 2002 with a memorandum on the face of the check which read:

FIRE DAMAGE TO DWELLING:
DWELLING                    $119,500.00
DEBRIS REMOVAL               $5,975.00

Plaintiff deposited the 31 January 2002 check.

## II. Procedural History

Plaintiff filed a complaint[1] on 15 September 2005, seeking damages from defendant West American for unfair or deceptive trade practices (UDTP), breach of contract, and willful, wanton and oppressive breach of contract. In the same complaint, plaintiff sought damages from defendant Graham for breach of contract and breach of fiduciary duty. The gravamen of the complaint was that even though the written contract of insurance set the dwelling coverage amount at $119,500, defendants had orally agreed or impliedly assumed a duty to cover whatever it cost to replace the house, which plaintiff estimated at two hundred forty-four thousand seven hundred sixty dollars ($244,760). Defendant Graham answered on or about 22 December 2005, denying the existence of any oral agreement to pay for the cost of replacing the house beyond the written coverage amount, denying it assumed any duty to periodically appraise the dwelling and increase the written coverage amount, and asserting plaintiff's contributory negligence as an affirmative defense. The answer of Defendant West American was filed on 30 January 2006 and contained substantially similar defenses.

Defendant West American filed a motion for summary judgment on or about 8 September 2006. Defendant Graham filed a motion for summary judgment on or about 12 October 2006. The trial court entered summary judgment in favor of both defendants as to all claims on or about 27 November 2006. Plaintiff appeals from entry of summary judgment in favor of defendants.

## III. Procedural Issues

A. Rules Violations

[1] Defendants argue that plaintiff's appeal should be dismissed because of violations of the Rules of Appellate Procedure. However, we will not address this argument because "such motions may not be raised in a brief, but rather must be made in accordance with Rule 37 of the North Carolina Rules of Appellate Procedure." *Freeman v.*

---

1. The complaint originally named Frank Biggerstaff as a defendant, but he was dismissed without prejudice from the lawsuit before entry of summary judgment.

*Rothrock*, 189 N.C. App. 31, 35, 657 S.E.2d 389, 392 (2008) (citation, internal brackets and quotation marks omitted) (declining to address appellee's argument that appeal should be dismissed for failure to follow the Rules of Appellate Procedure when the argument was labeled "Motion to Dismiss" in the brief); *but see Cotter v. Cotter*, 185 N.C. App. 511, 514-15, 648 S.E.2d 552, 554 (2007) (addressing and overruling an appellee's argument similar in substance to that in *Freeman* but which was labeled "Argument" in the brief), *and Hammonds v. Lumbee River Elec. Membership Corp.*, 178 N.C. App. 1, 12, 631 S.E.2d 1, 9 (addressing and overruling an appellee's argument similar in substance to that in *Freeman* but which was labeled "Argument" in the brief), *disc. review denied*, 360 N.C. 576, 635 S.E.2d 598 (2006). Nevertheless, we note of our own initiative that failure of plaintiff's counsel to include a statement of the grounds for appellate review and failure to include a standard of review for each question presented as required by Rule 28 are "indicative of inartful appellate advocacy," *Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 199, 657 S.E.2d 361, 365 (2008), for which plaintiff's counsel should be chastised "with an admonishment to exercise more diligence . . . in briefs prepared for this Court." *State v. Parker*, 187 N.C. App. 131, 135, 653 S.E.2d 6, 8 (2007).

B. Standard of Review

The trial court must grant summary judgment upon a party's motion when there is no genuine issue as to any material fact and any party is entitled to a judgment as a matter of law. . . . Summary judgment is appropriate if: (1) the non-moving party does not have a factual basis for each essential element of its claim; (2) the facts are not disputed and only a question of law remains; or (3) if the non-moving party is unable to overcome an affirmative defense offered by the moving party[.]

*Griffith v. Glen Wood Co., Inc.*, 184 N.C. App. 206, 210, 646 S.E.2d 550, 554 (2007) (internal citations, quotation marks, ellipses and footnote omitted). "On appeal, an order granting summary judgment is reviewed *de novo*[,]" *id.*, with the evidence in the record viewed in the light most favorable to the plaintiff, *Collingwood*, 324 N.C. at 66, 376 S.E.2d at 427.

IV. Substantive Issues

A. Breach of Contract

**[2]** "The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract."

*Poor v. Hill,* 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000). It is undisputed that defendant West American paid the entire amount promised in the written contract for dwelling insurance coverage: $119,500. However, plaintiff contends that the written contract did not reflect the true agreement of the parties, and should be reformed on account of the inequitable conduct of defendant Graham as agent for West American.

In support of her argument for reformation, plaintiff states the law of equitable reformation by quoting from *Williams v. Greensboro Fire Ins. Co.,* "[i]t is well settled that in equity a written instrument, including insurance policies, can be reformed by parol evidence, for . . . inequitable conduct . . ." 209 N.C. 765, 769, 185 S.E. 21, 23 (1936). However, the ellipses in plaintiff's statement of the law omit an important portion of the law. Stated fully in relevant part, "in equity a written instrument, including insurance policies, can be reformed by parole evidence, for . . . *the mistake of one superinduced* by the fraud of the other or inequitable conduct *of the other.*" *Id.* (emphasis added); *see also McCallum v. Old Republic Life Ins. Co.,* 259 N.C. 573, 577, 131 S.E.2d 435, 438 (1963) ("Fraud or inequitable conduct, to warrant relief by way of reformation, has been held to consist in doing acts, or omitting to do acts, which the court finds to be unconscionable, as in drafting, or having drafted, an instrument contrary to the previous understanding of the parties and permitting the other party to sign it without informing him thereof." (Citation, quotation marks and ellipses omitted.)) Furthermore, reformation is available only when the written agreement "leaves it doubtful or uncertain as to what the agreement [intended by the parties] was." *Williams,* 209 N.C. at 771, 185 S.E. at 24; *see also McCallum,* 259 N.C. at 579, 131 S.E.2d at 439 ("The power of a court of equity to reform written instruments so as to speak the real contract of the parties is beyond question[.]" (Citation and quotation marks omitted.)); *Allen v. Roanoke R. & Lumber Co.,* 171 N.C. 339, 342, 88 S.E. 492, 493 (1916) ("[I]n order to . . . exercise [equitable jurisdiction] for the purpose of reforming the instrument *because it does not properly express the agreement* of the parties, it is established that the mistake must be mutual, or it must be the mistake of one superinduced by the fraud of the other.") (Emphasis added.) (cited in 27 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 70:26 n.32 (4th ed. 2003)). Thus, to survive summary judgment in an action for equitable reformation of a contract on the basis of inequitable conduct by the promisor, a plaintiff must show a factual basis for four essential elements: (1) the written agree-

ment did not properly express the intent of the parties, *Allen*, 171 N.C. at 342, 88 S.E. at 493, (2) the conduct of the promisor caused the improper expression, (3) relevant, competent evidence exists outside the written documents which shows the intention of the parties, *Williams*, 209 N.C. at 769, 185 S.E. at 23, and (4) injustice will result if the contract is not rewritten, *Swan Quarter Farms, Inc. v. Spencer*, 133 N.C. App. 106, 110, 514 S.E.2d 735, 738, *disc. review denied*, 350 N.C. 850, 539 S.E.2d 651 (1999).

Plaintiff argues that a genuine issue of material fact on this issue is created by evidence from her affidavit filed 18 September 2006, after defendant West American's motion for summary judgment, in which she stated:

Several years before the fire, and preceding the most recent update in insurance, I requested that Graham make sure that I had adequate replacement cost coverage for my house and its contents, and Graham specifically agreed to do this. After this discussion, Graham came back to me and indicated and confirmed that they had in fact placed adequate replacement cost coverage insurance on my house and its contents.

However, her sworn deposition testimony on 24 March 2004 was:

Q[:] . . . What did you talk to Mary Uttley [employee of Graham] about the last time you spoke to her before the fire?

. . . .

A[:] I do remember telling her that when she was writing the insurance that she knew what Haywood always did, and he believed in good coverage and for her just to cover it. And I trusted her. She covered it.

. . . .

Q[:] . . . [Y]ou've testified that your husband told you you had replacement cost and [Mary] Uttley said that you were fully covered, and that a USF&G adjustor in the [19]80s said that you had replacement cost coverage?

A[:] Right.

Q[:] Is there anything else, any other basis for your statement of your belief that you had replacement cost coverage before the fire?

A[:] I don't know of any.

"[A] non-moving party cannot create an issue of fact to defeat summary judgment simply by filing an affidavit contradicting his prior sworn testimony[.]" *Belcher v. Fleetwood Enters., Inc.*, 162 N.C. App. 80, 86, 590 S.E.2d 15, 19 (2004) (summarizing the holding of *Wachovia Mortg. Co. v. Autry-Barker-Spurrier Real Estate, Inc.*, 39 N.C. App. 1, 9, 249 S.E.2d 727, 732 (1978). Therefore, we disregard the evidence in the affidavit which contradicts plaintiff's sworn deposition testimony.

Viewing the evidence in the light most favorable to plaintiff, the records shows only that about fifteen years before the fire, plaintiff requested that Graham continue to provide her with the same insurance provided to Mr. Carter. Plaintiff provided no evidence of any action by defendants to change from the type and amount of coverage provided to Mr. Carter. Plaintiff's dwelling coverage was regularly adjusted for inflation, and the coverage was for more than 92% of the home's value according to the appraisal prepared less than two years before the fire. The dwelling coverage amount was clearly stated on the face of the policy, and there is no evidence that plaintiff was unable to read and understand the policy. Plaintiff simply has not provided a factual basis to support equitable reformation of the insurance policy. *See, e.g.*, *McCallum*, 259 N.C. at 581-82, 131 S.E.2d at 441 (reversing dismissal of action for reformation when plaintiff alleged that a one-year life insurance policy was purchased to secure a loan, the effective date of the insurance policy was a few days before the loan was disbursed and the insured died after expiration of the insurance policy but less than one year from the date the loan was disbursed); *Hubbard & Co. v. Horne*, 203 N.C. 205, 209, 165 S.E. 347, 349 (1932) (affirming denial of motion to dismiss action for reformation where the record contained evidence that a lien subordination provision had been made known to the lender's agent but was omitted from the written contract which the lender's agent induced the borrower to sign); *Transit, Inc. v. Casualty Co.*, 20 N.C. App. 215, 201 S.E.2d 216 (1973) (affirming reformation of insurance contract for inequitable conduct when the insurer inserted a mileage limit into a vehicle insurance policy and did not inform the insured of the insertion even though the insurance agent knew the insured's buses routinely traveled more than the mileage limit), *aff'd*, 285 N.C. 541, 206 S.E.2d 155 (1974).

B  Breach of Fiduciary Duty

**[3]** Plaintiff next contends that defendant Graham breached a fiduciary duty to procure insurance for her. She contends that her affidavit cited· *supra,* along with expert testimony in the record stating that pursuant to a loss claim in 1997 the insurer should have evaluated her insurance and advised her to increase the coverage if it was not sufficient, constituted an adequate factual basis for this claim.

> Where an insurance agent or broker promises, or gives some affirmative assurance, that he will procure or renew a policy of insurance under circumstances which lull the insured into the belief that such insurance has been effected, the law will impose · upon the broker or agent the obligation to perform the duty which he has thus assumed.

*Barnett v. Security Ins. Co. of Hartford,* 84 N.C. App. 376, 378, 352 S.E.2d 855, 857 (1987) (citations and quotation marks omitted). Further, where the insured in reliance on the affirmative representation of the insurer, "mistakenly believed that certain items were covered by insurance, and did not seek additional coverage[,]" the insured has a cause of action for negligence. *R-Anell Homes v. Alexander & Alexander,* 62 N.C. App. 653, 657, 303 S.E.2d 573, 576 (1983).

Other than the disregarded evidence in plaintiff's affidavit discussed *supra,* there is no evidence in the record that Graham gave affirmative assurance to procure an insurance policy, other than to renew the policy Mr. Carter had purchased. There is no evidence in the record that Mr. Carter had purchased a policy other than the one in effect on the date of the fire: a dwelling policy that regularly adjusted for inflation in local construction costs.

*Barnett* contains dicta which states, "[a]dditionally, if in their · prior dealings, the agent has customarily taken care of the customer's insurance needs without consulting the insured, then a legal duty to procure additional insurance may arise without express orders from the customers and acceptance by the agent." *Barnett,* 84 N.C. App. at 378, 352 S.E.2d at 857. However, we decline plaintiff's invitation to extend *Barnett* and *R-Anell Homes* to include the case *sub judice,* where the insurer in fact renewed the insured's coverage for the property specifically named in the policy. *See Baggett v. Summerlin Ins. & Realty, Inc.,* 143 N.C. App. 43, 55, 545 S.E.2d 462, 469 (Tyson, J., dissenting on the basis that *R-Anell Homes* policy contained flood insurance and the policy expressly excluded coverage for flood

losses), *rvs'd per curiam*, 354 N.C. 347, 554 S.E.2d 336 (2001) (adopting the reasoning of the dissent).

C. Unfair or Deceptive Trade Practices

**[4]** Plaintiff contends that the trial court erred when it granted summary judgment on her claim for unfair or deceptive trade practices in favor of defendants. We disagree.

Plaintiff argues that evidence of the following acts by defendant West American is sufficient to survive summary judgment on her claim of unfair and deceptive trade practices: (1) defendant West American took eighteen months to pay plaintiff's claim for the dwelling and nearly three years to pay the personalty claim "notwithstanding that there was no dispute regarding coverage," (2) defendant West American did not cancel the policy until it expired on 8 February 2001, (3) the adjuster told plaintiff to pretend that she was not represented by counsel so that they could continue to confer directly, and (4) defendant West American tendered payment with a memorandum on the check that attempted to limit its exposure.

To succeed on a claim for UDTP, a plaintiff must prove: "(1) defendants committed an unfair or deceptive act or practice; (2) in or affecting commerce; and (3) that plaintiff was injured thereby." *First Atl. Mgmt. Corp. v. Dunlea Realty Co.*, 131 N.C. App. 242, 252, 507 S.E.2d 56, 63 (1998); N.C. Gen. Stat. § 75-1.1 (2005). "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). Pursuant to an insurance policy, " '[n]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear,' " *Country Club of Johnston Cty., Inc. v. U. S. Fidelity & Guar. Co.*, 150 N.C. App. 231, 247, 563 S.E.2d 269, 280 (2002) (quoting N.C. Gen. Stat. § 58-63-15(11)(f)), is "inherently unfair, unscrupulous, and injurious to consumers[,]" *Id.*

Plaintiff's assertion that "there was no dispute regarding coverage" is manifestly contrary to plenary evidence in the record. Plaintiff was offered the full amount of the dwelling policy limits in October 2000, but she chose to refuse it and hire an attorney. Further, plaintiff's refusal to accept the tender of $125,475 on 14 June 2001 is not an unfair or deceptive act on the part of West American. West American's failure to cancel the policy before it expired was neither unfair nor deceptive when plaintiff had not yet filed an inven-

tory of the contents as required by the policy. Advising plaintiff to pretend that she was not represented by counsel may be inappropriate, but there is no evidence that plaintiff suffered damages as a result, as required in a claim for unfair or deceptive trade practices. *First Atl. Mgmt. Corp.*, 131 N.C. App. at 252, 507 S.E.2d at 63. Finally, there was nothing deceptive about the memorandum on the 14 June 2001 tender of payment, as the words "REFLECTS TOTAL RECOVERABLE UNDER THESE COVERAGES" accurately represented the terms of plaintiff's insurance policy. In sum, plaintiff has forecast no evidence that she was injured by any unfair or deceptive act on the part of defendants.

### V. Conclusion

Plaintiff failed to forecast evidence in support of the essential elements for any of her claims. Accordingly, we affirm the trial court order granting summary judgment in favor of defendants as to all claims.

AFFIRMED.

Judges HUNTER and CALABRIA concur.