Allran v. Branch Banking & Trust Corp., 2013 NCBC 41.

STATE OF NORTH CAROLINA

GASTON COUNTY

IN THE GENERAL COURT OF
JUSTICE
SUPERIOR COURT DIVISION
10 CVS 5482

NEIL EDGAR ALLRAN,

          Plaintiff,

v.

BRANCH BANKING & TRUST
CORPORATION, and JOHN DOES 1
THROUGH 4,

          Defendants.

ORDER AND OPINION

*Thomas A. Will, Jr. for Plaintiff Neil Edgar Allran.*

*Womble Carlyle Sandridge & Rice, PLLC by Pressly M. Millen for Defendant Branch Banking and Trust Company.*

Murphy, Judge.

{1}    THIS MATTER is before the Court on Defendant Branch Banking and Trust Company's[1] ("BB&T") Motion for Summary Judgment pursuant to Rule 56 of the North Carolina Rules of Civil Procedure. After considering the pleadings, the briefs, affidavits, discovery responses, submissions of the parties, and the arguments and contentions made by counsel during the July 24, 2012, hearing on Defendant's Motion, the Court GRANTS Defendant's Motion as to Plaintiff's claim for unfair and deceptive trade practices ("UDTP") and GRANTS Defendant's Motion with respect to Defendant's deficiency counterclaim against Plaintiff for amounts Plaintiff borrowed from BB&T.

I.

PROCEDURAL BACKGROUND

{2}    Plaintiff Neil Edgar Allran filed his Complaint on November 18, 2010.

{3}    The matter was transferred to the North Carolina Business Court as a mandatory complex business case on December 20, 2010, and subsequently assigned to me.

---

[1] Defendant was incorrectly named in the Complaint as Branch Bank and Trust Corporation.

{4}     Defendant BB&T filed its Motion to Dismiss and supporting brief on January 21, 2011.

{5}     On March 28, 2011, the Court heard oral arguments on BB&T's Motion to Dismiss and, thereafter, dismissed Plaintiff's claims for breach of fiduciary duty, common law fraud, fraud in the inducement, and constructive fraud.  The Court denied Defendant's motion to dismiss Plaintiff's claim for UDTP under Section 75-1.1 of the North Carolina General Statutes.

{6}     On August 5, 2011, BB&T filed its Answer and Counterclaim, which included a claim based upon Plaintiff's default under a Note executed by Plaintiff in favor of BB&T in the amount of $616,551.08, plus interest. Plaintiff filed his Reply on September 8, 2011.

{7}     BB&T filed the current Motion and supporting brief on February 17, 2012, to which Plaintiff filed what would charitably be referred to as a Response on April 4, 2012.  BB&T's Reply in Support was filed on April 17, 2012.

{8}     On March 8, 2012, Plaintiff voluntarily dismissed his claim against Laura Corbett ("Corbett"), with prejudice.

{9}     The Court heard oral arguments on BB&T's Motion on July 24, 2012.

II.

FACTUAL BACKGROUND

{10}    In October 2005, Plaintiff purchased a lot ("First Lot") within the Cannonsgate development in Carteret County, North Carolina, from an entity known as Infinity Partners ("Infinity") for $192,000.  Plaintiff made the purchase as an investment, upon the advice of a friend; Plaintiff never intended to develop the property, but rather planned to "flip" it for a profit.  (*See* Transcript of Pl.'s Dep. 18–24, Nov. 21, 2011 ("Allran Tr.").)

{11}    As part of the sales pitch, Infinity informed Plaintiff that BB&T was one of several preferred lenders that included Bank of America and SunTrust Bank. BB&T did, in fact, finance the First Lot purchase.

{12}    In May 2006, Plaintiff sold the First Lot for $330,000.

{13}    In October 2006, Plaintiff was again approached by a representative of Infinity about purchasing another property in Cannonsgate at a price of "around $690,000" ("Second Lot").  The price was "set by Infinity" and Infinity "presented [Plaintiff] an appraisal that indicated that the price was $690,000." (Allran Tr. 55.) Plaintiff based his decision to purchase solely on the appraisal presented by Infinity and did not conduct an independent investigation of the lot or the purchase price. (Allran Tr. 56.)  Thereafter, Plaintiff applied to Defendant for a loan to finance the purchase.

{14}    According to Plaintiff, Corbett, a BB&T loan officer, initially informed Plaintiff that he did not qualify for a loan in an amount sufficient to make the purchase.  The next day, however, Corbett called Plaintiff and informed him that if Plaintiff deposited $10,000.00 into Plaintiff's checking account with BB&T, she could get him qualified for the loan.  Plaintiff concedes that Corbett did not tell him that the purchase represented a good investment and he was not "relying on her for investment advice." (Allran Tr. 33–34.)

{15}    To qualify for the loan, Plaintiff borrowed $10,000.00 from his employer and placed it in his checking account.  Plaintiff did not disclose to Corbett the particulars of the loan.  Thereafter, BB&T approved Plaintiff for a loan in the amount of $621,000.00.  Plaintiff purchased the lot sight-unseen, with the closing occurring on November 18, 2006.

{16}    During the course of the loan approval process, Plaintiff alleges, *inter alia*, that without Plaintiff's knowledge or consent, Defendants prepared or caused to be prepared a HUD-1 statement that contained false information.  In his deposition, however, Plaintiff testified that the HUD-1 settlement statement was prepared by an entity called The Settlement Source, an entity that "took care of the legal work for Infinity," not by BB&T. (Allran Tr. 77.)  In fact, Allran was not certain whether BB&T ever saw the HUD-1 statement (Allran Tr. 77.)

{17}    Plaintiff also alleged that Corbett, John Does 1 through 4, and BB&T engaged in unfair and deceptive acts by "falsif[ying] parts of Plaintiff's loan

application and personal financial statement, [and by] misrepresent[ing] the value of the property." (Compl. ¶ 28.)

{18} Plaintiff conceded during his deposition testimony that his loan application and personal financial statement purported to bear his initials and signature, but says he did not read the documents before signing them. However, in an affidavit (offered after the close of discovery and in response to Defendant's Motion), Plaintiff denies that he personally applied his initials and signature to the documents and states that Corbett "or some other individual forged my initials and my signature on the Offer to Purchase and contract dated October 25, 2006." (Pl.'s Aff. ¶¶ 18–19.) By way of additional affidavits (also filed after the close of discovery and in response to Defendant's Motion), Plaintiff offered the opinion of a forensic expert who stated that "it is more likely than not that Neil Edgar Allran did not write either of the two questioned signatures" on the documents. (Aff. of Charles E. Perrotta ¶ 3.)

{19} In his deposition testimony, Plaintiff also acknowledges that he benefited from the loan to the extent that it allowed him to purchase the property. (Allran Tr. 65.) In addition, Plaintiff testified during his deposition that it was Infinity and its agent who were the "ringleaders" behind his misguided purchase of the Second Lot, but he opted not to sue them because "[t]he company was gone. Everybody had filed bankruptcy" and "we couldn't find anybody." (Allran Tr. 88).

{20} Finally, Plaintiff proffered the affidavit of Corbett (now Laura Martin) (also filed after the close of discovery and in response to Defendant's Motion) who acknowledged that she was familiar with Plaintiff's finances "as I had handled an earlier loan for the purchase of another lot in the Cannonsgate development for Mr. Allran." She admits that she was the BB&T employee who informed Plaintiff that he would not qualify for a loan sufficient to cover a purchase price of $690,000. She further admits that she was the one who "prepared the Personal Financial Statement . . . and the Retail Loan Application . . . as part of the loan application process" (Aff. of Laura Martin ¶ 7), and submitted the documents to Direct Retail Lending in Winston-Salem because the amount was over her retail lending

authority. (*See* Aff. of Laura Martin.) Ms. Martin does not, however, offer any explanation for the "inaccuracies," "forged" initials and signature, or other "false" statements within the Personal Financial Statement and Retail Loan Application that she prepared for Plaintiff.

{21}   Plaintiff's loan went into default in March 2009, approximately twenty-seven months after the closing in November 2006.

{22}   Plaintiff acknowledges that he did not actually rely on the Personal Financial Statement and Retail Loan Application in making his decision to purchase the lot in question. Plaintiff did not see either document until BB&T produced them as part of a discovery response in September 2011.

{23}   Plaintiff offered no evidence to refute Defendant's deficiency counterclaim under the Note for the $616,551.08 that Plaintiff borrowed from BB&T.

III.

STANDARD OF REVIEW

{24}   Summary Judgment is appropriate "if the pleadings, depositions, interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that a party is entitled to judgment as a matter of law." *Johnson v. Phoenix Mut. Life Ins. Co.*, 300 N.C. 247, 253, 266 S.E.2d 610, 615 (1980); *Rose v. Guilford Cnty.,* 60 N.C. App. 170, 172, 298 S.E.2d 200, 202 (1982).

{25}   A genuine issue of material fact is defined "as one in which 'the facts alleged are such as to constitute a legal defense or are of such nature as to affect the result of the action, or if the resolution of the issue is so essential that the party against whom it is resolved may not prevail. . . . [A] genuine issue is one which can be maintained by substantial evidence.'" *Smith v. Smith*, 65 N.C. App. 139, 142, 308 S.E.2d 504, 506 (1983) (alterations in original) (quoting *Zimmerman v. Hogg & Allen, P.A.*, 286 N.C. 24, 29, 209 S.E.2d 795, 798 (1974)).

{26}   A party may show that there is no genuine issue as to any material facts by showing that no facts are in dispute. And where "an issue of fact arises, a

party may show that it is not a genuine issue as to a material fact by showing that the party with the burden of proof in the action will not be able to present substantial evidence which would allow that issue to be resolved in his favor." *See Best v. Perry*, 41 N.C. App. 107, 110, 254 S.E.2d 281, 284 (1979) (citing *Koontz v. City of Winston-Salem*, 280 N.C. 513, 186 S.E.2d 897 (1972)).

IV.

ANALYSIS

A.

UNFAIR AND DECEPTIVE TRADE PRACTICES ("UDTP")

{27}    To prevail on a claim for unfair and deceptive trade practices

> a claimant must demonstrate the existence of three factors: '(1) an unfair or deceptive act or practice, or unfair method of competition, (2) in or affecting commerce, and (3) which proximately caused actual injury to the plaintiff or his business.' The term 'unfair' means a practice which offends established public policy, and which can be characterized by one or more of the following terms: immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

*Murray v. Nationwide Mut. Ins. Co.*, 123 N.C. App. 1, 9, 472 S.E.2d 358, 362 (1996) (citations omitted).

{28}    "In making a claim of unfair and deceptive trade practices on a theory of misrepresentation or fraud, a plaintiff must show that a defendant's words or conduct possessed 'the tendency or capacity to mislead' or create the likelihood of deception." *Hospira Inc. v. AlphaGary Corp.*, 194 N.C. App. 695, 702, 671 S.E.2d 7, 12 (2009) (quoting *Marshall v. Miller,* 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981)).

{29}    "Where an unfair or deceptive practice claim is based upon an alleged misrepresentation by the defendant, the plaintiff must show 'actual reliance' on the alleged misrepresentation in order to establish that the alleged misrepresentation 'proximately caused' the injury of which plaintiff complains." *Tucker v. Blvd. at Piper Glen LLC,* 150 N.C. App. 150, 154, 564 S.E.2d 248, 251 (2002) (quoting

*Pleasant Valley Promenade v. Lechmere, Inc.*, 120 N.C. App. 650, 664, 464 S.E.2d 47, 58 (1995)).

{30}    Here, Plaintiff points to no evidence that BB&T made an affirmative misrepresentation of a material fact directly to Plaintiff or to anyone in privity with Plaintiff, or that he actually relied on any of Defendant's alleged misrepresentations in making the decision to close on the loan. Rather, Plaintiff contends that one or more of the named Defendants (Corbett (now voluntarily dismissed with prejudice), John Does 1 through 4, and/or BB&T): (a) without Plaintiff's knowledge or consent, falsified Plaintiff's HUD-1 statement, Retail Loan Application, and Personal Financial Statement, including his signature; (b) were deceptive and were in and affecting commerce; and (c) injured Plaintiff as a result.

{31}    It is undisputed that Plaintiff did not discover any of BB&T's alleged improprieties, or the consequences thereof, until September 2011 when his Personal Financial Statement and Retail Loan Application were produced by BB&T in discovery. (Allran Tr. 11–14.)

{32}    The Court first addresses whether the alleged misrepresentation can serve as a basis for Plaintiff's UDTP claim, *i.e.*, that Defendants misrepresented to Plaintiff that properties in the Cannonsgate development were good investments. Plaintiff conceded in his deposition that Corbett did not tell him the purchase represented a good investment and he was not "relying on her for investment advice." (Allran Tr. 31, 33–34.) Accordingly, the Court finds no reason to pursue an analysis of the claim on this basis.

{33}    Next, the Court considers Plaintiff's allegations that Defendants failed to use a truthful and accurate HUD-1 settlement statement as a basis for his UDTP claim. As noted above, Plaintiff acknowledges that the HUD-1 statement was prepared by an entity called The Settlement Source, not by BB&T. Accordingly, any inaccurate information included in the HUD-1 would have been more appropriately attributable to The Settlement Source, not to BB&T.

{34}    The Court turns next to the question of whether there is a genuine issue of material fact regarding the alleged falsification of information in Plaintiff's

Personal Financial Statement and Retail Loan Application, including forging his signature.

{35}   The Court first notes that all of the affidavits attached to Plaintiff's Response to Defendant's Motion were taken after the close of discovery in this case. In addition, they were not filed until after Defendant filed its Motion and accordingly should not be considered sufficient to create an issue of material fact. *Carter v. W. Am. Ins. Co.*, 190 N.C. App. 532, 539, 661 S.E.2d 264, 270 (2008) ("'[A] non-moving party cannot create an issue of fact to defeat summary judgment simply by filing an affidavit contradicting his prior sworn testimony[.]'")  Having acknowledged in his deposition that the initials on the Retail Loan Application and Personal Financial Application were his, Plaintiff should not now be allowed to offer affidavits that call his testimony into question.  *See id.*

{36}   Even if the affidavits were to be accepted, Plaintiff's best evidence, supported by his affidavit but controverted by BB&T, is that Corbett "or another employee of BB&T falsified items contained in and forged my signature on the Personal Financial Statement dated October 25, 2006 and the Retail Loan Application dated October 25, 2006."  (Allran Tr. 16.)

{37}   Aside from Corbett, Plaintiff does not identify any other known employee of BB&T, or any other person for that matter, who was involved in the alleged misdeeds.  This is problematic because Plaintiff voluntarily dismissed all claims against Corbett, with prejudice, on March 8, 2012.

{38}   "[A] 'dismissal with prejudice, unless the court has made some other provision, is subject to the usual rules of res judicata and is *effective not only on the immediate parties but also on their privies.*'"  *Wrenn v. Maria Parham Hosp.*, 135 N.C. App. 672, 681, 522 S.E.2d 789, 794 (1999) (quoting *Barnes v. McGee,* 21 N.C. App. 287, 289, 204 S.E.2d 203, 205 (1974)).  In *Wrenn*, the Court of Appeals considered whether a plaintiff could proceed against the employer of an alleged tortfeasor on the theory of *respondeat superior*, after plaintiff dismissed with prejudice and without payment his claims against the employee.  *Id.*  The court concluded that plaintiff was barred from proceeding against defendant-employer

because the dismissal against the employee operated as an adjudication on the merits under the express language of Rule 41 and the court's previous holding in *Barnes*. *Id.* The court held that because the voluntary dismissal specifically stated it was with prejudice, "the dismissal . . . operated as a disposition on the merits, and 'precludes subsequent litigation [against defendant] . . . in the same manner as if the action had been prosecuted to a full adjudication against the plaintiff.'" *Wrenn*, 135 N.C. App. at 680, 522 S.E.2d at 794 (quoting *Graham v. Hardee's Food Sys.*, 121 N.C. App. 382, 384, 465 S.E.2d 558, 559–60 (1996)). "Thus, '[a] judgment on the merits in favor of the employee precludes any action against the employer where, as here, the employer's liability is purely derivative.'" *Wrenn*, 135 N.C. App. at 681, 522 S.E.2d at 794 (quoting *Barnes*, 21 N.C. App. at 289, 204 S.E.2d at 205).

{39}     In this case, Plaintiff dismissed with prejudice the very employee of Defendant who Plaintiff claims falsified information contained in, and forged Plaintiff's signature on, the Personal Financial Statement dated October 25, 2006, and the Retail Loan Application dated October 25, 2006. BB&T's liability derives from the alleged misconduct of Corbett, its employee. Under the rationale of *Wrenn*, dismissal with prejudice as to Corbett operated as a disposition on the merits, and precludes subsequent litigation against Defendant in the same manner as if the action had been prosecuted to a full adjudication against Plaintiff.

{40}     Even if, as Plaintiff suggested in argument, Corbett acted outside the course and scope of her employment with BB&T by falsifying information and forging Plaintiff's signature, absent a claim of conspiracy, which was not pled in this case, there remains no legal support upon which to buttress Plaintiff's claim.

{41}     The Court, therefore, GRANTS Defendant's Motion for Summary Judgment with respect to Plaintiff's claim for UDTP.

B.

DEFENDANT'S COUNTERCLAIM

{42}     Because Plaintiff offered no evidence or argument to refute Defendant's deficiency counterclaim under the Note for $616,551.08, the Court concludes that there is no genuine issue as to any material fact and Defendant is

entitled to judgment as a matter of law.  Therefore, Defendant's Motion is GRANTED as to its counterclaim.

V.

CONCLUSION

{43}   For the reasons stated above, the Court concludes as a matter of law that there is no genuine issue as to any material fact germane to Plaintiff's claim for unfair and deceptive trade practices or to Defendant's deficiency counterclaim. Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment, and therefore DISMISSES Plaintiff's claim for UDTP, with prejudice.  Further, the Court GRANTS Defendant's Motion for Summary Judgment as to its counterclaim. IT IS, THEREFORE, ORDERED that Defendant have and recover of Plaintiff the sum of $616,551.08, plus interest from April 25, 2011, until satisfied in full, plus attorney's fees, as provided for under the Note executed by Plaintiff with BB&T.

SO ORDERED, this the 1st day of August 2013.